UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Stan Koch and Sons Trucking, Inc., <br><br> Plaintiff, <br><br> v. <br><br> American Interstate Insurance Company, <br><br> Defendant. | Case No.:   18-cv-02945-PJS-HB <br><br><br> **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |

## INTRODUCTION

Minnesota law requires Plaintiff Stan Koch and Sons Trucking, Inc. ("Koch") to carry workers' compensation insurance. In 2013, Koch agreed to purchase a workers' compensation insurance policy from Defendant American Interstate Insurance Company ("American"). The rate an insurer can charge a policyholder like Koch is largely non-discretionary, but the insurer may modify a policy's premiums by applying "schedule rating factors" that account for the policyholder's likelihood and severity of future losses. When American quoted a workers' compensation insurance policy for Koch, American used state-approved schedule rating factors to increase the prospective premiums Koch would pay because American determined Koch had a higher potential for future losses. With full knowledge of the increased premiums because of the schedule rating factors, Koch entered into an insurance contract with American. American provided coverage from May 1, 2013 to February 1, 2014, and Koch paid the corresponding premiums.

Koch now contends American breached the parties' contract in how it calculated Koch's premiums. Specifically, Koch alleges American did not comply with rules on file

in the states where American provided coverage, which Koch contends are incorporated into the parties' contract. Koch seeks a refund of the premium amounts attributable to the schedule rating factors. Koch also alleges American's purported failure to comply with the rules was a deceptive trade practice under Minnesota's Uniform Deceptive Trade Practices Act.

Koch's claims fail as a matter of law. In a case involving near identical allegations of breach of contract, the Eighth Circuit recently held that an insured does not have legally cognizable damages unless it can show it could have obtained less expensive coverage had the insurer not breached the parties' contract. *WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 897 F.3d 987, 994 (8th Cir. 2018). In *WireCo*, the plaintiff/insured alleged, as Koch does here, that its damages were the premiums it paid from what it alleged were improperly applied schedule rating factors. The *WireCo* Court expressly held these were not legally cognizable damages because the insured was obligated to carry workers' compensation insurance, and it must establish it could have obtained less expensive coverage had the insurer not breached. Koch makes no such allegation. Instead, its damages theory is the same the *WireCo* Court held was not legally sufficient. Therefore, Koch's breach of contract claim must be dismissed.

Koch's remaining claims also fail as a matter of law. Even taking Koch's allegations as true, American has not engaged in a "deceptive trade practice." Instead, Koch has merely alleged that American has not fully performed a private contract. In addition, Koch is only entitled to injunctive relief for its deceptive trade practices claim, and Koch has not requested injunctive relief (nor would it be entitled to any had it been requested). Koch's

remaining claims for breach of the covenant of good faith and fair dealing, unjust enrichment, and promissory estoppel are barred by the parties' written agreement and Koch's lack of damages. Accordingly, Koch's Complaint should be dismissed in full.

## BACKGROUND

The following facts from the Complaint are accepted as true only for purposes of this motion to dismiss. *Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001).

American is a workers' compensation insurer. (ECF No. 1-1 ¶ 3.) Koch is a Minnesota corporation that provides trucking and transportation services. (*Id*. ¶ 2.) Under Minnesota law, Koch is obligated to carry workers' compensation insurance unless it qualifies to self-insure. Minn. Stat. § 176.181, subd. 2. Koch purchased a workers' compensation insurance policy from American, with an effective date of May 1, 2013. (ECF No. 1-1 ¶ 5.) The policy terminated on February 1, 2014. (*Id*. ¶ 37.) A copy of the operative policy is attached to Koch's Complaint as Exhibit A (hereinafter referred to as the "Policy"). (*See* ECF No. 1-2, Ex. A.)

Koch alleges American did not correctly calculate premiums under the Policy. Workers' compensation premiums are calculated as a rate applied to an employer's payroll. For that reason, workers compensation insurers calculate premiums twice. (ECF No. 1-1 ¶ 7.) First, an insurer calculates an "estimated premium" based on the employer/prospective insured's estimated payroll for the coming year. (*Id*.) If the employer/prospective insured accepts the rate and enters into an insurance contract, the insurer provides coverage and the

insured pays the estimated premiums, and the insurer conducts an audit after the policy ends to determine a "final premium" based on the insured's actual payroll. (*Id.*)

The rate an insurer applies to create the estimated and final premiums is largely non-discretionary. An insurer may modify that rate by applying "schedule rating factors" to account for an employer's risk factors that "bear[ ] on the probability or severity of future losses." (ECF No. 1-1 ¶ 20.) There are seven "schedule rating factors" an insurer can apply. (*Id.* ¶ 26.) If the schedule rating factors are applied to increase the rate, it creates a "debit." If it decreases the base premium, it creates a "credit." Insurers are not obligated to apply schedule rating factors, but if they do so the factors are applied before the policy begins and before the insured has accepted coverage. (*Id.* ¶ 21.) In other words, the employer/prospective insured is aware that an insurer has applied schedule rating factors to increase or decrease the rate the insurer will use to calculate the insured's premiums. (*Id.*; *see also* ECF No. 1-2, Ex. A at p. 1 (information page of policy showing, under Section "4. Premium," the amount under the policy attributable to "Schedule Rating Factor").) If the employer/prospective insured finds the "estimated premium" acceptable, it enters into an insurance contract with the insurer and pays the estimated premiums. (ECF No. 1-1 ¶ 8 (stating estimated premium is calculated "before the policy goes into effect").)

Here, American identified each component comprising Koch's estimated premium in Section "4. Premium" on the first page of the Policy. Koch's total modified premium was $2,940,078. (ECF No. 1-2, Ex. A at p. 1 § 4.) American applied schedule rating factors to increase Koch's premium by $598,865. (*Id.*; *see also* ECF No. 1-1 ¶ 29.) Koch received a $472,999 "premium discount" reduction. (ECF No. 1-2, Ex. A at p. 1 § 4.) In total, its

estimated premium was $3,066,282. (*Id*.) With full knowledge of this, including knowledge that it included $598,865 for schedule rating debits, Koch accepted coverage, entered into an insurance agreement with American, and paid the estimated premium. (ECF No. 1-1 ¶¶ 9-10, 38; ECF No. 1-2, Ex. A.) After the Policy expired, American conducted a final audit and determined Koch owed $46,805 in additional premiums based on Koch's actual payroll figures. (ECF No. 1-1 ¶ 38.)

Koch alleges American did not correctly apply the schedule rating factors. (*Id*. ¶¶ 30-31.) The Policy provides that "[a]ll premiums for this policy will be determined by our manuals of rules, rates, rating plans and classifications." (*Id*. ¶ 13.) American must file its "Manual of Rules, Classifications, Rates and Rating Plans" with the regulator in each state where American provides workers' compensation coverage. (*Id*. ¶ 17.) American is a member of the National Council on Compensation Insurance ("NCCI"), which files manuals on its members' behalf. (*Id*. ¶¶ 23-25.) The NCCI's manual provides that an insurer "must have documentation on file detailing the basis for the credit or debit" for a schedule rating factor "[a]t the time that the schedule rating factor is applied." (*Id*. ¶ 27.)

Koch contends "American did not have documentation on file detailing the basis for the debit and credits." (*Id*. ¶ 30.) Koch also alleges American made "substantive errors" in applying the schedule rating factors. (*Id*. ¶ 31.) Because of these alleged errors, Koch claims its premiums were "artificially increased" in each state where American provided coverage. (*Id*. ¶ 40.) In other words, Koch contends its premiums should not have included the schedule rating debit. (*Id*.) In its Complaint, Koch asserts claims for breach of contract (Count I), breach of the duty of good faith and fair dealing (Count II), unjust enrichment

(Count III), promissory estoppel (Count IV), and a violation of Minnesota's Uniform Deceptive Trade Practice Act under Minnesota Statute Section 325D.43 (Count V). Koch seeks a monetary judgment in excess of $445,000, plus its costs and attorneys' fees. (ECF No. 1-1 ¶ 40, Prayer for Relief.)

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) is warranted when a complaint fails to allege facts sufficient to state a claim as a matter of law. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient facts to state a claim for relief that is "plausible on its face." *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

In reviewing a complaint under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true and construes the pleadings in a light most favorable to the non-moving party. *Bhd. of Maint. of Way Employees*, 270 F.3d at 638. The Court may also consider exhibits and documents the plaintiff expressly incorporates into the complaint. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 697, n. 4 (8th Cir.2003) ("[I]n considering a motion to dismiss, the district court may sometimes

consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint.").

## ARGUMENT

I. **Koch's breach of contract claim must be dismissed because it has not alleged any legally cognizable damages.**

To state a plausible claim for breach of contract under Minnesota law, Koch must allege: (1) a contract was formed, (2) it performed any required conditions precedent, (3) American materially breached the contract, and (4) Koch suffered damages as a result. *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 789 F. Supp. 2d 1148, 1155 (D. Minn. 2011). "A breach of contract claim fails as a matter of law if the plaintiff cannot establish that he or she has been damaged by the alleged breach." *Jensen v. Duluth Area YMCA*, 688 N.W.2d 574, 578–79 (Minn. Ct. App. 2004). Here, Koch alleges American erroneously applied schedule rating factors to increase Koch's premiums in breach of the Policy. (ECF No. 1-1 ¶¶ 46-47.) Koch alleges its damages are the difference between the premiums it paid and the amount it would have paid had the schedule rating factors not been applied. (*Id*. ¶ 40(a)-(aa).)

Koch fails to allege legally cognizable damages, which requires dismissal of Koch's breach of contract claim. The Eighth Circuit very recently addressed this precise issue. *WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 897 F.3d 987, 994 (8th Cir. 2018). In *WireCo*, an employer, WireCo, purchased a workers compensation insurance policy from Liberty Mutual. *Id*. at 989. The policy was originally in effect from June 30, 2009 to June 30, 2010. *Id*. WireCo purchased renewal policies in 2010, 2011, and 2012. *Id*. Like

the Policy in this case, WireCo's policy provided coverage in multiple states. *Id*. As American's policy provides, WireCo's policy provided that premiums would "be determined by our Manuals of Rules, Classifications, Rates and Rating Plans" on file with each state where coverage was provided (hereinafter, the "Manuals"). *Id*. Liberty applied scheduling rating debits to WireCo's policy, which increased WireCo's premiums. *Id.* at 990. Years after the policies lapsed, WireCo filed suit, Liberty Mutual, claiming Liberty had applied schedule rating debits in renewal policies without providing notice to WireCo, in violation of Liberty's Manual on file in Missouri, and without sufficient documentation to support the schedule rating debut, in violation of Liberty's Manual on file in Texas.[1] *Id*. at 994. Specifically, WireCo alleged "Liberty did not have sufficient documentation in its file to support the schedule rating modification as required by the Texas Schedule Rating Plan, and thus breached the 2012 renewal policy by modifying the rating factor." *Id*. at 990. WireCo claimed its damages were the difference between the premiums it paid and the amount it would have paid had the contested scheduled rating debits not been applied. *Id*. at 994.

---

[1] WireCo later claimed Liberty did not have adequate documentation to support the schedule rating debits applied to its policy in Missouri. *WireCo*, 897 F.3d at 992-93. The District Court did not consider this claim, finding it had first been raised on summary judgment. *Id*. at 992. The Eighth Circuit affirmed. *Id*. at 993. Nevertheless, the question of whether Liberty breached its contract with WireCo for having insufficient documentation to support schedule rating debits in Texas was properly before the Court and was considered by both the District Court and Eighth Circuit. *Id*. at 994 ("The alleged breaches are that Liberty failed to meet the procedural requirements of the Missouri and Texas schedule rating plans. Specifically, WireCo claimed that Liberty . . . did not have proper documentation in its files when it modified the Texas schedule rating factor."). Accordingly, *WireCo* is on point to Koch's claim.

The District Court entered summary judgment in Liberty's favor on WireCo's breach of contract claim, and the Eighth Circuit affirmed. The Eighth Circuit noted that the purpose of damages for breach of contract was to "put the non-breaching party in the same position as if the contract would have been performed." *WireCo*, 897 F.3d at 994 (citation omitted). Accordingly, "the proper measure of damages in this scenario is the difference between the premiums WireCo actually paid under the renewal policies and the premiums that WireCo would have paid if Liberty had given proper notice of the modification and maintained proper documentation in its files. That relief would place WireCo in the same position that it would have enjoyed if Liberty had performed on the contract." *Id*. The *WireCo* Court noted that WireCo was obligated to carry workers' compensation insurance. *Id*. Therefore, it was not enough to say that its premiums were improperly increased based on the schedule rating debits; instead, it must show "it would have paid lower premiums if Liberty had complied with the notice and documentation requirements of the Missouri and Texas schedule rating plans." *Id*. at 994-95. Consequently, its damages theory was "flawed" and failed as a matter of law because it would result in a windfall, in that WireCo would have retroactively obtained less expensive coverage than it could have obtained on the market at the time. In other words, WireCo's damages theory incorrectly placed it in a *better position* than it would be in had its contract not been breached.

*WireCo* is directly on point. Like *WireCo*, Koch alleges American breached the Policy by failing to comply with procedural requirements in the Manuals. Indeed, Koch's claim that American did not have adequate documentation to support its schedule rating debits is a replica of WireCo's claim. (*Compare* ECF No. 1-1 ¶ 47 (alleging American

"breached its contract of insurance with Koch by failing to adequately document the basis for its schedule rating debits and credits for the Policy.") *with WireCo*, 897 F.3d at 994 ("The alleged breaches are that Liberty failed to meet the procedural requirements of the Missouri and Texas schedule rating plans" because "Liberty did not have proper documentation in its files when it modified the Texas schedule rating factor.").)

Koch's theory of damages is identical as well. It seeks as damages the difference between the premiums it paid and the premium it *would have paid* had the schedule rating debits not been applied. (ECF No. 1-1 ¶ 40.) As the *WireCo* Court recognized, these are not legally cognizable damages for breach the Policy because they would place Koch in a *better position* than had the Policy been fully performed. Under *WireCo*, Koch must plausibly allege it would have obtained less expensive coverage had American complied with the Manuals in calculating schedule rating debits. Koch's Complaint is devoid of any such allegation. Therefore, its claim for breach of contract (Count I) must be dismissed.

The *WireCo* decision compels this outcome even though it was decided on summary judgment and under Missouri law. First, in addressing WireCo's alleged damages, the *WireCo* Court was not engaging in an evidentiary analysis. Instead, it determined that WireCo's damages theory failed *as a matter of law*. American should not be required to endure discovery on a damages theory the Eighth Circuit has already found is legally insufficient. Second, the *WireCo* Court cited to Missouri contract law for the elements of claim for breach of contract and for the proposition that "[t]he goal in awarding damages is to put the nonbreaching party in the same position as if the contract would have been performed." *WireCo*, 897 F.3d at 994. Minnesota's law is identical. *Kellogg v. Woods*, 720

N.W.2d 845, 853 (Minn. Ct. App. 2006) ("The appropriate measure for breach-of-contract damages is the amount that will place the nonbreaching party in the same position he would be in had the contract been performed."). Therefore, there is no reason the Eighth Circuit would reach a different conclusion under Minnesota law, meaning *WireCo* compels the dismissal of Koch's claim for breach of contract.

## II. Koch has not plausibly alleged American engaged in a deceptive trade practice or that it is entitled to injunctive relief, requiring dismissal of Koch's Deceptive Trade Practices Act claim.

To state a claim under Minnesota's Uniform Deceptive Trade Practices Act ("TPA"), Koch must allege American engaged in "false, deceptive, or misleading conduct" in the sale of the Policy by "represent[ing] that a policy has characteristics it does not" or by "mak[ing] other representations that create a likelihood of confusion or misunderstanding." *Nelson v. Am. Family Mut. Ins. Co.*, 262 F. Supp. 3d 835, 861 (D. Minn. 2017), *aff'd*, 899 F.3d 475 (8th Cir. 2018). Koch's allegations must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 678 F.3d 659, 665 (8th Cir. 2012). Koch need not allege it relied on American's alleged misconduct, but it must establish that the conduct was the *cause* of its damage. *Yarrington v. Solvay Pharm., Inc.*, A05-2288, 2006 WL 2729463, at *5 (Minn. Ct. App. Sept. 26, 2006). Injunctive relief is the only remedy available for breaching the TPA. *Nelson*, 262 F. Supp. 3d at 861. "A plaintiff's failure to present evidence that he/she faces a risk of future harm requires dismissal of an MDTPA claim." *Id*.

Koch's TPA claim fails as a matter of law for three reasons. First, Koch has not alleged American engaged in a deceptive trade practice. The TPA includes a litany of

conduct that constitutes a deceptive trade practice, like "passing off" another's goods as one's own, trademark infringement, representing used goods as new, misrepresenting the origin, quality or availability of goods, misrepresenting price reductions, or disparaging the goods, service or business of another through false or misleading statements. Minn. Stat. § 325D.44, subd. 1. Koch alleges American did not calculate its premiums in compliance with the Manuals when the parties' private contract said American would do so. (ECF No. 1-1 ¶ 67.) This is not a deceptive trade practice because Koch does not contend the coverage it received and enjoyed was any different than what American represented. The price of the Policy was also as advertised. Indeed, on the information page of the Policy that Koch had in its possession, the Policy plainly states the premium was being increased for "schedule rating" debits. (ECF No. 1-2, Ex. A at p. 1.) Koch merely alleges American failed to meet a procedural requirement in calculating that price and/or obtaining and retaining the documentation required to support it, which is a private contract dispute that does not rise to the level of a "deceptive trade practice." To construe Koch's allegations as sufficient to state a claim under the TPA would turn every private contract dispute into a TPA claim simply because one party contractually represented it would engage in some conduct that it later (allegedly) failed to do.

Second, Koch's allegations do not establish that American's alleged lack of documentation caused it to be harmed. As the *WireCo* Court held, Koch must allege that it could have and would have obtained less expensive coverage had American complied with the Manuals and the Policy not been breached. Instead, Koch merely states the schedule rating debits should not have been applied. Because Koch has not alleged that American's

alleged deceptive trade practice was the cause of its harm (i.e. Koch would have obtained less expensive coverage elsewhere), its TPA claim fails as a matter of law.

Finally, the only relief Koch seeks for its TPA claim is monetary damages. (ECF No. 1-1 ¶ 68, Prayer for Relief (requesting only monetary relief).) However, Koch is only entitled to injunctive relief. Minn. Stat. § 325D.45; *Nelson*, 262 F. Supp. 3d at 861. Accordingly, Koch's TPA claim must be dismissed. *See Randall v. R.S.C. Equip. Rental,* 11-CV-2944 PJS/LIB, 2012 WL 2060634, at *2 (D. Minn. June 7, 2012) (dismissing TPA claim in part because plaintiff sought damages when only statutorily available relief is injunctive). Even had Koch requested injunctive relief, it would not be entitled to any as a matter of law. To receive injunctive relief under the TPA, Koch must allege it faces a future risk of harm. *Nelson*, 262 F. Supp. 3d at 861. Koch has none. It admits the Policy ended on February 1, 2014. (ECF No. 1-1 ¶ 5.) It does not allege the Policy was renewed or that it has entered into an agreement with American for future coverage. Koch also does not claim that American's alleged misconduct has any likelihood of continuing. As the *Nelson* court found while addressing a TPA claim involving insurance coverage, if Koch continues to be displeased with American's conduct, Koch "would be welcome to cancel [its] policy, or decline to renew it, and obtain insurance elsewhere." *Id.* at 863. Thus, Koch has no risk of future harm. And, "to the extent [Koch] might suffer future harm, there is no indication that a monetary award would not fully compensate [it], meaning that any harm is not irreparable." *Id*. Indeed, Koch seeks monetary damages in its Complaint, meaning that it is not entitled injunctive relief as a matter of law.  Therefore, Koch's TPA claim (Count V) should be dismissed.

### III. Koch's remaining claims for breach of the covenant of good faith and fair dealing, unjust enrichment and promissory estoppel are barred by the Policy and should be dismissed as a matter of law.

In Counts II-IV, Koch asserts claims for breach of the covenant of good faith and fair dealing, unjust enrichment, and promissory estoppel. Each is barred as a matter of law and should be dismissed.

An implied covenant of good faith and fair dealing exists in insurance contracts. *Nelson*, 262 F. Supp. 3d at 853. "In general terms, this covenant requires that one party not unjustifiably hinder the other party's performance of the contract." *Id*. "The implied covenant of good faith and fair dealing serves only to enforce *existing* contractual duties, and *not* to create new ones." *Id*. (citing *Watkins Inc. v. Chilkoot Distrib., Inc.*, 719 F.3d 987, 994 (8th Cir. 2013)) (emphasis in original). "Moreover, the covenant is breached only by conduct that is dishonest or malicious or otherwise in subjective bad faith." *Id*. (citing *BP Prod. N. Am., Inc. v. Twin Cities Stores, Inc.*, 534 F.Supp.2d 959, 965–67 (D. Minn. 2007)).

Koch's good faith and fair dealing claim fails because it has not alleged any legally cognizable damages for breach of contract. "A claim for breach of the implied covenant of good faith and fair dealing is a contract-based claim*." OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Research*, 132 F. Supp. 3d 1119, 1127 (D. Minn. 2015), *aff'd in part*, 851 F.3d 800 (8th Cir. 2017). Where the plaintiff has no damages for breach of contract, its claim for good faith and fair dealing must fall as well. *Id*.

Second, Koch fails to allege how American's calculation of schedule rating debits hindered Koch's performance of the Policy. Koch's primary complaint is that it paid more

in premiums than it believes it should have, but Koch also admits it made the premium payments and enjoyed insurance coverage. Thus, Koch's performance was not hindered.

In addition, Koch does not allege, nor can it be inferred from its allegations, that American exercise discretion under the Policy in a malicious manner or in subjective bad faith when it calculated Koch's premiums. *See T.B. Allen & Assocs., Inc. v. Euro-Pro Operating LLC,* CIV. 11-3479 JRT/JSM, 2013 WL 64605, at *4 (D. Minn. Jan. 4, 2013) (finding sales representative's allegations that employer failed to pay commissions did not establish commissions were withheld in bad faith). When Koch entered into the Policy with American, it was aware American had applied scheduling rating factors to increase its estimated premiums. (ECF No. 1-2, Ex. A at p. 1 (first page of Policy stating premium associated with schedule rating factors); ECF No. 1-1 ¶ 21 (schedule rating debits "applied at policy inception").) Thus, the only "discretionary" act American took—applying the factors to increase Koch's premiums—occurred *before* the Policy began and the parties entered into the contractual relationship. There is no allegation that American exercised discretion during the contractual relationship which could give rise to a good faith and fair dealing claim.

In addition, there is no allegation American calculated the schedule fating factors in subjective bad faith. Instead, Koch has a genuine disagreement about how American calculated its premiums. (*See* ECF No. 1-1 ¶ 30 ("At the time [American] was to have applied the aforementioned debits to calculate the premium for the Policy, Amerisafe did not have documentation on file detailing the basis for the debits and credits."); *see also BP Products N. Am., Inc*., 534 F. Supp. 2d at 965 ("Reading into the implied covenant a duty

to act with objective reasonableness—or, put differently, holding that the implied covenant can be breached by good-faith mistakes—would require courts to litigate a huge number of contractual disputes under tort-like standards."). Because Koch fails to allege the subjective bad faith necessary to state a claim for breach of the covenant of good faith and fair dealing, Count II should be dismissed.

In Count III, Koch asserts a claim for unjust enrichment, alleging American received "excess premium payments" and Koch "is entitled to a refund." (ECF No. 1-1 ¶¶ 56-57.) To state a claim for unjust enrichment under Minnesota law, Koch must allege "another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." *T.B. Allen & Assocs.*, 2013 WL 64605, at *5. "To ensure that unjust enrichment is not used to reward a bad bargain, Minnesota courts require proof that a benefit was conferred unknowingly or unwillingly." *Id.* (internal quotations and citations omitted). "The benefit must be obtained unjustly, meaning illegally, unlawfully, or morally wrongfully." *Id.* "The existence of an express contract between parties precludes recovery under theories of quasi-contract, unjust enrichment, or quantum meruit." *Taylor Inv. Corp. v. Weil*, 169 F. Supp. 2d 1046, 1060 (D. Minn. 2001).

An express contract bars Koch's unjust enrichment claim. Koch alleges the Policy is a valid, written agreement between itself and American. (ECF No. 1-1 ¶¶ 5-6.) Koch offers no legal basis aside from the Policy for its claim that American has been unjustly enriched. In addition, the benefit Koch allegedly conferred on American—the additional premium payments from American's application of the schedule rating factors—was not

done "unknowingly or unwittingly," which is required for an unjust enrichment claim. *T.B. Allen & Assocs.*, 2013 WL 64605, at *5. The Policy plainly states on its first page that American was charging Koch $598,865 for the "Schedule Rating Factor." (ECF No. 1-2, Ex A at p. 1.) Koch paid pursuant to this premium calculation. (ECF No. 1-1 ¶ 9-10.) Accordingly, because there is an express contract governing Koch's claims of unjust enrichment, and because Koch did not unknowingly or unwittingly confer a benefit on American, its unjust enrichment claim should be dismissed.

In Count IV, Koch asserts a claim for promissory estoppel. "Promissory estoppel is the name applied to a contract implied in law where no contract exists in fact." *Del Hayes & Sons, Inc. v. Mitchell*, 230 N.W.2d 588, 593 (Minn. 1975). While a plaintiff may pursue alternative remedies at law and equity, a plaintiff may not base a claim for promissory estoppel on promises embodied in a contract. *T.B. Allen & Assoc.*, 2013 WL 64605, at *5 (D. Minn. Jan. 4, 2013). Here, Koch alleges "American represented to Koch that adjustments to the premium would be done objectively, based on published criteria and contemporaneous documentation." (ECF No. 1-1 ¶ 61.) Koch does not identify where, when and how American made these representations, but the remainder of its allegations in the Complaint make it clear American made these purported representations in the Policy. Thus, because Koch has alleged a written agreement exists between the parties and because the basis of its promissory estoppel claim is promises embedded in that agreement,

its promissory estoppel claim fails as a matter of law.[2] Count IV should be dismissed as a matter of law as well.

## CONCLUSION

Koch's Complaint should be dismissed in its entirety. Koch's claim for breach of contract fails as a matter of law because Koch has not alleged a legally cognizable theory of damages. Koch's claim under the Minnesota Uniform Deceptive Trade Practices Act also fails as a matter of law because Koch has not alleged American engaged in any deceptive conduct; Koch merely has a contractual disagreement with American over the calculation of its premiums. In addition, Koch is not entitled to injunctive relief as a matter of law, and Koch only seeks monetary damages for its deceptive trade practices act claim, which it cannot receive under Minnesota law. Finally, Koch's claims for breach of the covenant of good faith and fair dealing, unjust enrichment, and promissory estoppel should be dismissed because Koch does not have any damages, has not pleaded American acted in bad faith, and the claims are barred by the existence of a valid written agreement.

---

[2] Promissory estoppel is sometimes pleaded in the alternative to a breach of contract claim in the event the contract is deemed invalid. *See T.B. Allen & Assoc.*, 2013 WL 64605, at *5, n.10. However, dismissal is nevertheless warranted when the promissory estoppel allegations are based on the breach of contract claim, and when the plaintiff does not allege any basis for finding that the underlying contract is not valid. *Id.*

**STINSON LEONARD STREET LLP**

Dated: October 22, 2018 /s/Stephen E. Schemenauer
Stephen E. Schemenauer (MN ID #0388566)
Ryan M. Sugden (MN ID #0393436)
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
612.335.1500 Main
612.335.1657 Fax
stephen.schemenauer@stinson.com
ryan.sugden@stinson.com

**ATTORNEYS FOR DEFENDANT**