UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

-------------------------------------------------

Stan Koch and Sons Trucking, Inc.,            Case No. 18-CV-02945-PJS-HB

Plaintiff,

**PLAINTIFF'S MEMORANDUM
OF LAW IN OPPOSITION TO
MOTION TO COMPEL**

vs.

American Interstate Insurance Company,

Defendant.

-----------------------------------------------------

Plaintiff Stan Koch and Sons Trucking, Inc. ("Koch") has had key employees search for, retrieve, and produce thousands of documents requested by Defendant American Interstate Insurance Company ("AIIC") in this action. Koch's IT department conducted several additional searches of the company's archival system, resulting in the production of hundreds of more documents. Because AIIC calculated the premium, most of the documents in Koch's possession are of little relevance to this case. Nonetheless, Defendant moves to compel even more discovery from Koch. AIIC demands discovery of Koch's "due diligence and analysis before entering into the policy of insurance"; as well as disciplinary records of Koch's drivers; and communications between Koch's counsel and non-testifying expert.

AIIC's motion should be denied. Most, if not all, of the discovery AIIC seeks is not relevant, much less sufficiently probative to warrant additional

discovery. Koch's "due diligence" in choosing an insurance carrier is not relevant to the manner in which AIIC calculated the premium for the insurance policy at issue, and the parties agreed that the issue would be resolved by using AIIC's search terms, which Koch has done. Similarly, documents regarding Koch's enforcement of its safety procedures are not relevant, particularly where the documents post-date the writing of the policy. The communications between Koch's non-testifying expert and counsel took place long after Koch informed AIIC that it was contemplating litigation. And, sanctions are not warranted where Koch has participated in the discovery process in good faith and produced the bulk of its relevant documents months ago.

## FACTS

### A. AIIC Breached the Contract by Improperly Applying Schedule Rating Debits.

Koch purchased a worker's compensation insurance policy (the "Policy") from AIIC that covered the time period May 1, 2013 to February 1, 2014. ECF 5, Complaint, ¶ 5. Worker's compensation insurance is highly regulated, and carriers are subject to state rules that limit how much they can charge. See AIIC Ex. G, at 1. Thus, the parties agreed that the premium for the Policy would be determined according to AIIC's "manuals of rules, rates, rating plans and classifications" in the states covered by the Policy. Id. at ¶¶ 13-15.

Koch alleges AIIC breached the Policy by applying debits without necessary justification, in violation of the Schedule Rating Plans filed in numerous

states. ECF 5, Complaint at ¶¶ 27-35. As a result of these debits, Koch was overcharged over $445,000.00.  Id. at ¶ 40. Based on these and other facts, Koch alleges that AIIC "breached its contract of insurance with Koch by misapplying and miscalculating the schedule rating debits and credits applied to the premium for the Policy." Id., ¶ 46.

Either party had the right to cancel the Policy. In late summer of 2013, AIIC grew alarmed at some large claims reported by Koch and wanted "off" the Policy. See AIIC Exhibit A at 195:13 – 198:2. By November of 2013, AIIC was contemplating cancelling the Policy, and in January of 2014, AIIC issued a cancellation notice to Koch. AIIC Ex A at 219:6-9. The Policy was ultimately terminated via a Loss Policy Release on a "pro rata" basis effective February 1, 2014.  *See* Exhibit A to the Declaration of Kent M. Williams ("Williams Dec."). AIIC internally acknowledged it could only collect a pro rata share of premium, informed Koch that it was not trying to collect further premium, and made no attempt to collect further premium until August 5, 2019, when it filed its counterclaim.

Koch did not learn about the overcharges until 2016, after it retained a consultant, Patrick Charais of Synergetic Solutions, Inc., to audit the premium Koch paid for the Policy. *See generally* AIIC Ex. A, at 247:15 – 249:18.  Mr. Charais worked primarily with Koch's General Counsel, Kevin Giebel. *Id.* at 252:12-18. Koch requested AIIC's justification for the extra charges, but by October 23, 2017, AIIC was stonewalling to the point that Mr. Giebel was faced

with having to commence legal action to receive answers from AIIC. *See* AIIC Ex. F ("… we may be forced to request assistance from the Departments of Insurance and/or proceed with legal action").

Finally, on February 20, 2018, AIIC provided some heavily-redacted documents. On June 28, 2019, Koch provided AIIC with a lengthy report by Mr. Charais explaining how AIIC overcharged Koch by improperly applying the debits. *See* AIIC Ex. G. Further efforts at settlement were unsuccessful, and Koch brought the instant action in October of 2018.

### B. Discovery in this case.

Because AIIC calculated the premium, Koch possesses little relevant information other than the formation and terms of the contract between the parties, and few relevant documents other than the Policy itself. Thus, Koch's Rule 26(a)(1) disclosures identified only three persons with relevant information (Koch's Risk Manager, William Sullivan, claims department employee Dale Gouge, and former Chief Executive Officer, John Tillman), and Koch's initial document disclosure consisted mainly of the Policy and pre-litigation communications between Koch and AIIC regarding the dispute. *See* Williams Dec. ¶ 3; Declaration of Kevin Giebel ("Giebel Dec.") ¶¶ 3-4. Koch also invited AIIC to inspect Koch's claims files for additional documents, but AIIC declined. Giebel Dec. ¶ 3.

On or about March 22, 2019, AIIC served written discovery requests, to which Koch objected on relevancy grounds. *See* AIIC Ex. I at 3 (General

Objection No. 8).    Nevertheless, Koch conducted a search for additional "Amerisafe"-related documents, which took about 15 hours to complete. *See* Declaration of Brandon Gammon ("Gammon Dec."), ¶¶ 7.  As a result of this search, on April 26, 2019 Koch produced 178 additional documents. AIIC produced a total of about 360 documents during this same time period. *See* Williams Dec., ¶ 4.

AIIC challenged the sufficiency of Koch's document production.  After a series of meet and confers between counsel, Koch agreed to conduct an expanded search for responsive documents, utilizing nine search terms. Williams Dec., ¶¶ 6-7. Koch supplemented its interrogatory responses while the searches were pending.  *Id.*, ¶ 7. Although Koch's IT Department found some software to make the search process easier, the archival server still ran very slowly.  Gammon Dec. ¶ 8. Koch ended up producing 576 documents as a result of these searches, which took 10 hours of IT time and 40 hours of review and processing time to complete, over a span of several weeks.  *Id.*; see Declaration of Erica Miller ("Miller Dec."), ¶¶4-5.

AIIC still was not satisfied.   AIIC requested that Koch search for documents relating to Koch's "due diligence" in selecting a worker's compensation policy, and that Koch produce the disciplinary records of its drivers. Williams Dec. ¶ 9.  An initial search of emails from people involved in the process during the applicable time period took 5 hours and resulted in 16,761 hits. Gammon Dec. ¶ 9. AIIC demanded production of the documents, but Koch

refused.  To resolve the issue, AIIC's counsel proposed using eighteen additional search phrases, which Koch accepted.  Williams Dec. ¶ 10. The searches were run at a cost of 15 hours of IT time and 25 hours of review and processing time.  As a result, 571 documents were produced to AIIC on October 24, 2019.  *See* Gammon Dec. at ¶ 10; Miller Dec. ¶ 6.

Koch did not agree to produce driver disciplinary records, which would take weeks (if not months) to complete. Miller Dec. at 8.  Koch did produce a privilege log, which took 15 hours to complete.  Miller Dec. ¶ 7.  Prior to filing its motion, AIIC raised no objection to the privilege log, and the parties have not met and conferred regarding the privilege log or any documents on the log. Williams Dec. ¶ 11.

## ARGUMENT

As AIIC concedes, "this case concerns the manner in which Defendant calculated premiums under the Policy."  *See* AIIC's Memo at 2.  Documents pertaining to Koch's "due diligence" in obtaining the Policy, or Koch's enforcement of safety rules after AIIC wrote the Policy, are not relevant to how AIIC calculated the premium (specifically, Schedule Rating debits) or whether AIIC's counterclaim entitles it to a short-rate cancellation premium. Moreover, the parties agreed that the additional production on October 24 would be sufficient with respect to "due diligence" documents.  Given their limited relevance and the burden associated with retrieving the documents, the requests for "due diligence" discovery and disciplinary records are unduly burdensome and disproportionate to

6

the needs of the case. Lastly, all communications pertaining to the Charais report were properly withheld as privileged.

### A. Koch Should Not be Compelled to Provide Further Discovery Regarding Its "Due Diligence."

AIIC asserts that that documents pertaining to Koch's efforts to obtain quotes from other carriers, and Koch's "due diligence" (defined as "the investigation [Koch] conducted, including research, interviews, communications, document collection, analysis, and expert consultation of the Policy"), are relevant to AIIC's waiver and acquiescence defenses, and should be produced. AIIC Memo at 7.

Waiver of a contractual right is disfavored. *Schwan's Sales Enterprises, Inc. v. Sabatasso*, Case No. 4-87-126, 188 WL 119171 at *3 (D. Minn. Nov. 8, 1988). There is no evidence that any effort by Koch to compare insurance quotes has anything to do with AIIC improperly applying Schedule Rating debits to inflate the premium. AIIC cites no evidence to suggest that any "due diligence" by Koch is relevant to whether AIIC breached the contract, or the measure of damages to compensate Koch as if the contract been performed. Similarly, the activities by Koch's accounting department cited by AIIC (see AIIC Memo at 9)

all post-date the selection of the Policy, and there is no evidence that any Koch employee knew how AIIC calculated and applied the Schedule Rating debits.[1]

Second, Koch has scoured its email archives for anything remotely resembling the "due diligence" AIIC describes.  The parties agreed that a search of the email addresses of Messrs. Shepard, Tillman, and Sullivan, using the search terms and the time periods requested, would resolve the issue of further "due diligence" discovery.  Now that Koch has performed these searches and produced all the documents, Koch should not be forced to conduct yet another search for emails about an irrelevant topic, this time from persons who had no involvement whatsoever in selecting the Policy.

Third, the request for additional "due diligence" discovery is unduly burdensome, and AIIC has not shown that the request is proportional to the needs of the case.  Once a party from whom discovery is sought makes a showing that electronically-stored information is not reasonably accessible because of undue burden or cost, the party seeking the information must show good cause for the discovery. Fed. R. Civ. P. 26(b)(2)(B). The Gammon and Miller Affidavits evidence the difficulty of searching for and retrieving emails from Koch's archival system. Running searches for additional persons would likely take many more

---

[1]AIIC claims that quotes from other carriers are relevant because they may show "that Plaintiff could not obtain a Policy on the same terms with a better price than the Policy, which is a defense to Plaintiff's claims under Eighth Circuit precedent." *See* AIIC Memo at 10 (citing *Wireco Worldgroup v. Liberty Mut. Fire Ins. Co.*, 897 F.3d 987 (8th Cir. 2018). But *Wireco* only addressed the measure of damages for a claim of failing to provide notice or to maintain documentation. Koch makes no such claims in this case, which is why Judge Shiltz denied AIIC's motion to dismiss Koch's breach of contract claim.  *See* ECF 14.

weeks.  The burden involved requires a showing a good cause, which AIIC cannot make because of the dubious value of the additional discovery.

**B.      Koch Should Not be Compelled to Produce Driver Disciplinary Files.**

AIIC's request for "documents reflecting any incidents, traffic violations, and traffic reports" from May 1, 2013 to February 1, 2014 similarly asks for irrelevant information, and should be denied.

First, to be clear, AIIC's request would require Koch to go into thousands of individual employee files and pull any documents from the 2013 time period reflecting or relating to the above topics. As Ms. Miller explains, this would take a substantial amount of time to do, because the files are voluminous. *See* Miller Dec. ¶ 8. This burden should be considered in deciding whether to require the production of such marginally relevant documents.

Second, the disciplinary records are not relevant to how AIIC applied Schedule Rating debits in calculating the premium. There is no evidence that AIIC considered any driver disciplinary records in applying debits.  Indeed, all of the requested records post-date the writing of the Policy, and can't possibly be relevant. Nor are driver disciplinary records relevant to whether AIIC can recover a "short rate" instead of a "pro rata" premium.

AIIC tries to make the records appear relevant, by going through a convoluted recitation of what this case supposedly is "really" about, and illogically concluding that "a central dispute in this case is whether Plaintiff is actually a safe company."   *See* AIIC Memo at 16.   This statement is telling in that it reveals how broadly AIIC views discovery in this case.   This case is no more about whether Koch is a "safe" company than it is about whether AIIC is a "good" carrier.   The case is about whether AIIC breached a specific contractual provision that required AIIC to follow its rating plans in applying debits to increase the premium. Because there is no evidence that driver disciplinary records had any bearing on how AIIC applied the debits, the documents are clearly not relevant.

### C.   Koch Should Not Be Required to Produce Privileged Communications.

Although Koch's discovery responses included a timely objection to the production of communications Koch had with its non-testifying expert, Patrick Charais, or his company, Synergetic Solutions, on attorney-client and work product privilege grounds, AIIC claims Koch "waived" any right to object because Koch only asserted a "general" privilege objection and did not produce a privilege log until October 7, 2019.   Suffice it to say that the only case AIIC cites for such a notion, *Cargill, Inc. v. Ron Burge Trucking, Inc*., 284 F.R.D. 421 (D. Minn. 2012) stands for no such proposition.

The attorney/client privilege is based upon the principle "that sound legal advice or advocacy ... depends upon the lawyer's being fully informed by the

client." *Upjohn v. United States*, 449 U.S. 383, 389 (1981) (holding that the attorney-client privilege clearly applies to communications made to corporate counsel in the course of conducting an internal investigation); *U.S. v. Shyres*, 898 F.2d 647, 855 (8th Cir. 1990) (same). The work product doctrine protects all documents and tangible things prepared in anticipation of litigation or trial. Fed. R. Civ. P. 23 (b)(3). The doctrine was designed to prevent "'unwarranted inquiries into the files and mental impressions of an attorney'" and "recognizes that it is 'essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 402 (8th Cir.) (quoting *Hickman v. Taylor*, 329 U.S. 495 (1947), *cert. denied*, 484 U.S. 917 (1987). The work product doctrine is broader than the attorney-client privilege. *In re Murphy*, 560 F.2d 326, 337 (8th Cir. 1977). If the information is not prepared in "anticipation of litigation or trial," it is not subject to work product immunity. *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 603 (8th Cir. 1978).

Although Mr. Giebel referred to himself as "General Counsel of Stan Koch & Sons Trucking, Inc" in his dealings with AIIC, the main contention seems to be that Mr. Giebel was not acting as an attorney when he worked with Mr. Charais. *See* AIIC Memo at 21-23.  AIIC claims (without evidence) that auditing schedule rating debits to workers compensation premiums is an "ordinary business practice," but the record indicates otherwise. Indeed, the subject matter of one entry on October 21, 2017 is "Possible Lawsuit with Amerisafe." *See* AIIC Ex. L,

11

at 4 (entry 55). Moreover, on October 23, 2017, Mr. Giebel specifically warned that if AIIC failed to provide the requested documentation justifying the debits, Koch would be forced to "proceed with more formal legal action." *See* AIIC Ex. F.

AIIC relies heavily on *Dynamic Air Inc. v. Reichhold, Inc*., Case No. 05-955 (DWF/SRN), 2006 WL 8443569 (D. Minn. Sept. 1, 2006) to argue that Koch "waived" any privilege with respect to communications about the Charais report, by disclosing the report itself. AIIC Memo at 24.  But *Dynamic Air* involved different facts than are present here: most significantly, one of the reports at issue in *Dynamic Air* was written by a testifying expert, which made disclosure mandatory under Fed. R. Civ. P. 26(2)(A-C).  2006 WL 8443569 at *2.  In this case, Mr. Charais is not a testifying expert.  Moreover, the Court only required the production of *fact* work product, and refused to order the production of opinion work product because the plaintiff had not made the requisite showing of necessity and the unavailability of the evidence through some other means. *Id.*

AIIC claims "undue hardship" because Koch supposedly has not disclosed the basis for the Charais report, but all of the documents Mr. Charais relied upon are described in his report; indeed, most of them are attached. *See* AIIC Ex. G. No information that Mr. Charais relied upon was withheld. Thus, although AIIC complains that "the documents Plaintiff strenuously seeks to hide are the same ones Defendant would use to call into question the accuracy of Mr. Charais's report and its findings and his independence," AIIC identifies almost no specific

documents on the privilege log which is supposedly needs for its defense. Accordingly, the motion to compel production of Charais-related documents should be denied.

### D. Koch Should Not Be Sanctioned.

AIIC moves under Fed. R. Civ. P. 37(a)(5) for its fees and costs incurred in conferring about discovery matters, bringing the motion to compel, and taking additional deposition testimony of Mr. Sullivan. Expenses, including attorney's fees, are recoverable by the prevailing party on a motion to compel under certain circumstances. *See* Fed. R. Civ. P. 37(a)(5). This includes a party who successfully opposes a motion to compel.  *Id.* A party who unsuccessfully opposes a motion to compel, however, must not be ordered to pay if the motion was filed before attempting in good faith to resolve the issue without court action; if the opposing party's nondisclosure, response, or objection was substantially justified; or if other circumstances exist that would make the payment of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(i-iii).

### 1. Pertinent Facts.

Because AIIC calculated the premium at issue, Koch possesses few relevant documents other than the Policy itself.  Thus, Koch's Rule 26(a)(1) disclosures consisted mainly of the Policy and pre-litigation communications between Koch and AIIC regarding the dispute.

Koch served its Initial Disclosure on Defendant on February 8, 2019. Only AIIC knew the basis for the disputed Schedule Rating charges, so Koch had only limited knowledge of which documents in its possession are relevant. Koch's disclosure identified the Policy (which had already been identified and produced as an attachment to the Complaint), along with claims files and other documents that might be relevant depending upon whether they were part of AIIC's basis for applying the Scheduling Rating charges. Since Plaintiff did not know which of Koch's voluminous documents AIIC considered in applying the charges, Defendant's counsel, Ryan Sugden, was invited to inspect the documents, or to at least identify which documents AIIC had reviewed so they could be retrieved and produced. Mr. Sugden declined this offer. *See* Giebel Dec. at ¶ 3. Koch ended up producing several documents anyway. *Id.* at ¶ 4.

On April 26, 2019 Koch produced 178 additional documents in response to AIIC's written discovery requests, despite objecting generally on relevance grounds. Williams Dec. ¶ 3; Giebel Dec. ¶ 5. Few (if any) of these documents had anything to do with how the premium was calculated. Williams Dec. ¶ 3. During this same time period, AIIC produced 360 records. *Id.*, ¶ 4.

The document searches took considerable time and effort to complete. *See* Gammon Dec. at ¶¶ 3-7. Koch's IT Infrastructure and Telecom Manager, Brandon Gammon, explains that the archived documents use an outdated system called "Archive Manager" that cannot be migrated or upgraded. It took about 15

hours to run the searches for this production. *Id.*, ¶ 7. Review and processing required an additional 15 hours to complete. Miller Dec. ¶ 3.

On May 3, 2019, Koch noticed the depositions of AIIC and its auditors. The depositions were noticed for late May and early June.  On May 14, 2019, AIIC's counsel made numerous objections to the depositions.  *See* attached Exhibit A. Counsel spent hours resolving these  concerns. The depositions had to be rescheduled, and finally went forward on June 17, 2019 in Minneapolis and on July 23-26, 2019 in DeRidder, Louisiana. Williams Dec. ¶ 5.

On May 6, 2019, AIIC also raised numerous issues regarding Koch's discovery responses.  Giebel Dec. ¶ 6.  Because some of the  complaints about the discovery responses overlapped with the concerns about the depositions, a substantive written response was not provided until June 5, 2019, after questions about the depositions were resolved.  Williams Dec. ¶ 6.  On June 28, 2019, after significant meeting and conferring, Koch agreed to conduct additional searches for responsive emails.  On July 18, 2019, Koch provided a supplemental response to AIIC's contention interrogatories.  *Id.*, ¶ 7.

AIIC served its amended answer and counterclaim on August 5, 2019. AIIC took no written discovery on its counterclaim, and its counsel  made no mention of needing Koch's answer to take depositions.  Koch was still producing documents and had not yet answered the counterclaim when AIIC went forward with the deposition of Koch's Risk Manager, William Sullivan, on August 21, 2019.  The parties  agreed that the Sullivan deposition could be continued for questions based

upon the additional discovery, but did not agree regarding payment of AIIC's fees or costs. *Id*., ¶ 8.

Koch produced additional documents on August 23, September 13, and September 19, 2019, including 300 emails from Mr. Charais. *See* Williams Dec. ¶ 10; Giebel Dec. ¶¶ 7-8; Miller Dec. ¶ 4-5. The searches suffered from the same time-consuming, outdated archival system as the other search. Gammon Dec., ¶ 8. Moreover, all attempts to create metadata from Mr. Charais' emails failed, as Mr. Charais' emails were sent directly to Koch from Mr. Charais, and did not contain metadata. However, it is likely that these emails have been duplicated in prior ESI protocol email disclosures from Koch to AIIC, and can be otherwise authenticated. Giebel Dec. ¶¶ 8- 9.

AIIC, however, still was not satisfied. AIIC requested that Koch search the emails of William Sullivan, John Tillman, and Scott Shepard for documents relating to Koch's "due diligence" in selecting a worker's compensation policy, and that Koch produce the disciplinary records of its drivers. The "due diligence" search yielded nearly 17,000 emails, which AIIC demanded be reviewed and/or produced. Koch refused. Prior to the filing of AIIC's motion, the parties agreed to "break the impasse" by running eighteen additional searches using search terms supplied by AIIC. The searches were run, and the documents were produced on October 24, 2019. Williams Dec. ¶¶ 9-10; Miller Dec. ¶ 6.

Koch did not agree to the review and production of any driver disciplinary records.  The parties did not discuss the privilege log or any of the documents listed on it. Williams Dec. ¶ 11.

### 2. Koch should not be sanctioned regarding its document production.

AIIC contends Koch should be sanctioned because its document production was untimely, and falsely states that Koch did not begin searching its archives for documents until July.  AIIC Memo at 29.  AIIC  To the contrary, Koch located few relevant documents in its possession before the lawsuit began in October of 2018. But because most of the relevant events took place five or six years ago, virtually every other document Koch produced came from its archives, starting with the 178 documents Koch produced on April 26, 2019.

AIIC asserts that Koch's document production was not "substantially complete" by May 31, because most of the documents were produced after May 31. AIIC Memo at 30. But Koch's production of *relevant* and *non-duplicative* documents was substantially complete by May 31; most of the documents Koch produced after that date may be responsive to a discovery request, but are not relevant or are copies of documents already produced.

Finally, even if the Court finds that Koch's document production was not "substantially complete" by May 31, the Court should consider the issues Koch had with running the searches on its archival server, and Koch's willingness to work cooperatively to resolve issues and provide discovery, even if it is of

marginal relevance. Acting in good faith, Koch agreed to a multiplicity of searches, including the most recent searches using search terms supplied by Defendant. AIIC faults Koch for "unilaterally" choosing the search terms to use, see AIIC Memo at 29, but nothing prevented AIIC from suggesting search terms to elicit whatever probative documents it thinks are in Koch's possession. AIIC did eventually suggest some search terms, which Koch agreed to before AIIC's motion was filed. *See* Williams Dec. ¶ 10. Now that Koch has performed those searches and provided the documents, written discovery should be deemed complete in this case.

Koch has a substantial justification for resisting the review and production of driver disciplinary records. Aside from the obvious privacy concerns, such a project would take weeks and hundreds of hours to complete, for documents that would have little or no probative value. Koch also has a substantial basis for withholding communications between Charais and Koch's counsel on the basis of privileges that would be waived if the documents were knowingly disclosed. Moreover, there were no conversations between counsel regarding the October 7, 2019 privilege log (or the documents listed therein) prior to AIIC's October 14, 2019 motion. For these reasons, sanctions are not appropriate.

### 3. Koch should not be sanctioned regarding the deposition of William Sullivan.

AIIC claims that William Sullivan was not sufficiently prepared to answer all of counsel's questions, and that Koch agrees that a second deposition is

"warranted." AIIC Memo at 30-38. Both of these statements are untrue. Koch was willing to have Mr. Sullivan sit for additional deposition testimony to avoid a motion. Koch continues to believe a second deposition is not necessary, however, because the additional discovery would be superfluous and/or can be conducted less expensively.

Although Rule 30(b)(6) requires a deponent entity to designate a reasonably knowledgeable witness, "the Rule 30(b)(6) designee need not be 'perfect'; designees are responsible for information 'known or reasonably available to the corporation.' " *Mallak v. Aitkin County*, Case No. 13-cv-2119 (DWF/LIB), 2016 WL 8607391 at *6 (D. Minn. June 30, 2016) (citations omitted). "In this vein, this district has held that '[a]s a practical matter ... the Rule 30(b)(6) deponent is not expected to be clairvoyant, so as to divine the specific questions that could [be presented].' " *Id.* (quoting *Arctic Cat, Inc. v. Injection Research Specialists, Inc.*, 210 F.R.D. 680, 686 (D. Minn. 2002).

Contrary to AIIC's assertions, even a cursory review of the 272-page transcript reveals that Mr. Sullivan, Koch's Risk Manager and principal contact with AIIC during the events in question, was extremely well-prepared for his deposition. In addition to his own experience as the Koch employee chiefly responsible for locating appropriate insurance for the company, Mr. Sullivan spent a total of three to four hours prior to the deposition reviewing documents and meeting with counsel. AIIC Ex. A at 10:8 – 11:8. Thus, he provided extensive, detailed testimony in response to the majority of counsel's questions about the 25

separate topics covered during the seven-hour deposition. *See generally* AIIC Ex. A, M.

The few snippets of testimony offered by AIIC do not contradict this fact. Much of the information sought is not relevant. For example, as the Koch employee responsible for evaluating insurance options and providing proposals to management in 2013, *see* AIIC Ex A at 20:16-23, Mr. Sullivan is the person with the most knowledge about Topic 8 (Koch's "due diligence" and review of other insurance quotes) and Topic 10 (Koch's "due diligence" regarding the Policy and AIIC). Mr. Sullivan testified unequivocally that Koch relied exclusively upon agents and other outside experts for technical due diligence. Ex A, 151:25 – 153:11. With respect to Topic 21, the cited testimony demonstrates that Mr. Sullivan was speculating as to whether any emails exist that would refresh his recollection as to whether he spoke to one of AIIC's auditors before the Policy was bound. *See* AIIC Memo at 35. Thus, further questioning on these topics is not likely to yield useful information.

As the employee who retained Patrick Charais on Koch's behalf to audit the premium paid for the Policy in 2016, see AIIC Ex. C at 3, Mr. Sullivan is also the person most knowledgeable about Topic No. 22 ("Your retention of third-parties to review Your workers' compensation insurance program after February 1, 2014"). Although AIIC suggests otherwise, Mr. Sullivan answered all questions regarding that topic. *See* AIIC Ex A at 247:15 – 257:10. Now AIIC seeks to expand the scope of this topic by forcing Mr. Sullivan to testify about subsequent

events, i.e. Koch's "retention of, **and work with,** Mr. Charais." AIIC Memo at 37 (emphasis added). Koch should not be sanctioned because AIIC's intent to exceed the scope of this topic was not foreseen.

To the extent the Court believes any additional information would be useful or necessary, the information can be provided through less expensive means. For example, information responsive to Topic 1 (Koch's document retention policies) and Topic 25 (the factual bases for Koch's affirmative defenses to AIIC's counterclaim), can be provided as interrogatory responses. *See* AIIC Memo at 31-33, 37-38. The parties could also conduct the deposition telephonically and/or via video feed, or an attorney from counsel's local office could ask the questions. Finally, the Court should consider whether sanctions are appropriate where the Defendant took a deposition knowing that additional documents and information would be produced, as occurred in this case.

<u>CONCLUSION</u>

For the foregoing reasons, AIIC's motion to compel, and its request for sanctions, should be denied in their entirety.

Dated: November 4, 2019         **WILLIAMS LAW FIRM**

                                 */s/ Kent M. Williams*
                                 Kent M. Williams (Atty No. 222884)
                                 WILLIAMS LAW FIRM
                                 1632 Homestead Trail
                                 Long Lake, MN 55356
                                 612-940-4452
                                 williamslawmn@gmail.com

Kevin E. Giebel (Atty No. 164112)
P.O. Box 414
Lake Elmo, MN 55042
kgiebel@ggwklaw.com
(6510 236-0729

ATTORNEYS FOR PLAINTIFF