# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Stan Koch and Sons Trucking, Inc., <br><br> Plaintiff, <br><br> v. <br><br> American Interstate Insurance Company, <br><br> Defendant. | Case No. 18-cv-2945 (PJS/HB) <br><br><br> **ORDER** |

HILDY BOWBEER, United States Magistrate Judge

Defendant American Interstate Insurance Company ("AIIC") moves to compel Plaintiff Stan Koch and Sons Trucking, Inc. ("Koch") to more fully respond to several discovery requests and for sanctions. For the reasons set forth below, the motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

Koch, a national trucking company, purchased a workers' compensation insurance policy from AIIC for the period of May 1, 2013 to May 1, 2014. (Compl. ¶ 5 [Doc. No. 1-1]; Williams Decl. Ex. A [Doc. No. 70-1].) The policy was terminated early, so Koch was only insured by AIIC from May 1, 2013 through February 1, 2014. (Williams Decl. Ex. A [Doc. No. 70].) Koch alleges that AIIC overcharged Koch for its policy by improperly applying debits to Koch's premium in violation of the agreed-upon policy terms. Since the outcome of this motion will turn in large part on what evidence may be

relevant to that claim and/or the defenses thereto, the Court will briefly summarize the process of calculating workers' compensation insurance rates and premiums.[1]

Because the actual number of employees covered by a workers compensation insurance plan can fluctuate, sometimes significantly, during the covered period, the premium for that period is estimated up front and finalized later.  Before an employer enters into a workers' compensation insurance policy, it is offered an "estimated premium" based on its estimated number of employees for the policy term.  (Compl. ¶¶ 8, 10.)  In order to determine the estimated premium, the insurance provider's underwriters will conduct an assessment in which they forecast the number of expected claims and employees, taking into account the number of employees in each job category (since some job categories are more susceptible to workplace injuries than others), and calculate the premium needed to cover them.  One key aspect of this determination is the calculation of a "schedule rating," which is a method of adjusting the premium calculation with "debits" or "credits" based on readily-identifiable factors, such "safety devices," "employee selection," and "training and supervision."  (*Id.* ¶¶ 20, 26.)  "Debits" would result in the premium going up; "credits" would result in the premium going down.  This calculation is done on a state-by-state basis, depending on the places where the employer operates.  The insurance provider uses this information to fix an overall rate which it can offer to the purchaser.  If the parties agree, the rate, but not the total dollar

---

[1]  This summary is based in large part on the allegations in the Complaint and on the representations of counsel at the hearing held on December 4, 2019.

amount of the policy, gets locked in.[2]  The "final premium" amount will be calculated

retrospectively at the end of the contractual period, based on the number of employees

who were actually employed during that period and therefore covered under the plan.

(*Id.* ¶ 11.)

The parties agree the initial process is discretionary and competitive, although just

*how* discretionary is the subject of this lawsuit.  The calculation of the final premium is a

non-discretionary mathematical determination and is not the subject of Koch's

complaint.[3]  Rather, Koch alleges that AIIC improperly determined its schedule rating in

the pre-contractual underwriting process by applying debits without the necessary

justification, and by misinterpreting some of the schedule rating factors or relying on a

violation in one state to increase the premium calculation for another state, thereby

increasing the overall rate and resulting in an overcharge of $445,000.  (*Id.* ¶¶ 29–36, 40.)

Koch did not challenge AIIC's rate calculation before deciding to go with the

AIIC policy.  Rather, after considering competing offers by other insurers, it entered into

the policy with AIIC and paid the estimated premium.  But in 2016 Koch's Director of

Risk Management, William Sullivan, was approached by a rival insurance provider who

recommended that Koch contact a consultant, Patrick Charais of Synergetic Solutions,

---

[2]  The purchaser's payments are made according to the estimated premium.  If the final
calculated premium is higher than the estimated amount, the purchaser will owe
additional money; if lower, the purchaser will be refunded.  (Compl. ¶ 13.)

[3]  AIIC has, however, asserted a counterclaim that Koch breached the contract by failing
to pay all premiums due as a result of Koch's early termination of the policy, and that
AIIC is entitled to $133,220.00 in damages.  (Am. Answer & Counterclaim at 24 [Doc.
No. 47].)

and retain Charais to audit Koch's workers' compensation policies to determine if Koch

had been overcharged.  (Sullivan Dep. (Def. Ex. A) at 247–48 [Doc. No. 60-1].)  Koch

retained Charais on a contingency basis in February 2016.  (Def. Ex. C ¶ 2 [Doc. No. 60-

3].)

In the fall of 2017 Koch sent three letters to AIIC requesting certain documents to

aid Charais in his audit.  (*See* Def. Exs. D, E, F [Doc Nos. 60-4, 60-5, 60-6].)  In the last

of those letters, dated October 23, 2017, Koch's General Counsel threatened legal action

if AIIC did not provide the documentation.  (Def. Ex. F.)  AIIC eventually provided some

of the requested information.  (Def. Mem. Supp. at 59; Pl. Mem. Opp'n at 4.)

On June 18, 2018, Charais completed his report for Koch in which he identified

the alleged errors in AIIC's rate calculation.  (Def. Ex. G [Doc. No. 60-7].)  Koch

forwarded a copy of the report to AIIC on June 29, 2018, and requested a refund of

approximately $450,000.  AIIC rejected the demand and Koch commenced this lawsuit in

state court on October 10, 2018.  AIIC subsequently removed it to federal court.

## II.   Discussion

AIIC filed the instant motion seeking to compel production of documents falling

into two categories:[4]  (1) documents relating to Koch's enforcement of its safety policies,

---

[4]  AIIC initially sought to discover documents in a third category—those concerning
Koch's "due diligence and analysis" before it purchased the insurance policy from AIIC.
(Def. Mem. Supp. at 6 [Doc. No. 59].)  At oral argument AIIC represented that this issue
is no longer in dispute, as the parties have agreed on a resolution.  However, AIIC
maintains the issue still has bearing on the appropriateness of awarding sanctions.

and (2) communications relating to Charais's analysis and report prepared for Koch. AIIC also asks the Court to order sanctions against Koch.

### A.    Discovery Relating to Koch's Enforcement of its Safety Policies

AIIC's Request for Production No. 12 seeks copies of all employee handbooks, workplace safety manuals, and driver policies in use from May 1, 2012 to present.  (Def. Ex. I at 6 [Doc. No. 60-9].)  Koch represented at oral argument that it has responded fully to Request No. 12 by producing its employee safety manual, and it does not have any other documents responsive to that request.  AIIC has not challenged that representation. The Court therefore denies AIIC's motion pertaining to Request No. 12 as moot.

Request No. 13 seeks documents reflecting "all incidents, traffic violations, and traffic accident reports involving [Koch's] employees from May 1, 2012 to present." (*Id.*)  In response to Request No. 13 (and virtually every other document request), Koch directed AIIC to its "General Objections"—two pages of boilerplate objections interposed at the beginning of the responses, declaring some or all of the requests to be vague, overbroad, duplicative, seeking privileged or work product information, overly burdensome, irrelevant or otherwise objectionable.  (*Id.* at 2–3.)  Koch's specific response to Request No. 13 said only, "Subject to the above [general] objections and without waiver of same, see link in response to this Request, if any.  Discovery continues." (*Id.* at 6.)  The "link" referred to a previously provided hyperlink to purportedly responsive documents.

AIIC argues Request No. 13 seeks documents that it needs to refute Koch's claim that AIIC failed to take appropriate account of its safety policies during the underwriting

process.  AIIC reasons that the efficacy of safety policies in mitigating the risk of workplace injury would depend not only on their *existence*, but also on the extent to which Koch *enforced* them.  In particular, AIIC wants "driver disciplinary files" in response to Request No. 13, arguing that such files would contain evidence of how effectively Koch enforced its safety policies.  AIIC offered, however, to limit the time period encompassed by the request to the dates of insurance coverage: May 1, 2013 – February 1, 2014.

Koch argues that even with the more limited time parameter, the request seeks irrelevant information because it post-dates the determination of the rate, and therefore could not have been a factor in AIIC's premium calculation.  Koch also argues the request, even as limited, is unduly burdensome because it would require a search of "thousands of individual employee files" in order to identify responsive documents. (Pl. Mem. Opp'n at 9 [Doc. No. 66].)  AIIC responds that such specific objections are untimely and therefore waived, since Koch's only objections at the time of its initial responses were both general and boilerplate.

The Court begins by observing that Rule 34 requires that all responses to requests for information must "state with specificity the grounds for objecting to the request, including the reasons," and must reveal "whether any responsive materials are being withheld on the basis of that objection."  Fed. R. Civ. P. 34(b)(2)(B)–(C).  Routine, "[b]oilerplate objections, without more specific explanations for any refusal to provide information, are not consistent with the Federal Rules of Civil Procedure." *Lubrication Techs., Inc. v. Lee's Oil Serv., LLC*, Case No. 11-cv-2226 (DSD/LIB), 2012 WL

1633259, at *5 n.5 (D. Minn. Apr. 10, 2012) (citation omitted).  There is no question that Koch's objections were boilerplate and non-specific and therefore ineffective.

But although Koch's boilerplate objections were inconsistent with the requirements of the Federal Rules, so also was AIIC's Request No. 13.  "[T]he Court may still find that a request on its face is not proportional to the needs of the case, given the relevance of the requested discovery."  *Klein v. Affiliated Grp., Inc.*, Case No. 18-cv-949 DWF/ECW, 2019 WL 1307884, at *7 n.9 (D. Minn. Mar. 22, 2019).  Here, AIIC's request showed little, if any, more thought about relevance and proportionality than did Koch's objections, and even the subsequent attempts to limit it failed to bring it within the realm of relevance to the issues in this case.  And when AIIC finally got specific about what it really wanted and how it related to an actual issue in the case, it became clear that Request No. 13 simply does not ask for the material AIIC sought. AIIC argues it needs the information sought by Request No. 13 to refute Koch's claim that AIIC overstated its premium because it under-considered Koch's safety policies. (Def. Mem. Supp. at 16 ("If Koch is going to offer lay and expert witness testimony that Koch is a safe company entitled to a lower insurance premium because of its safety policies, AIIC is entitled to discovery on (and offer evidence at trial of) Koch's safety policies and whether Koch actually enforced them.").)  As noted above, the question of the *existence* of safety policies was the subject of Request No. 12, and Koch has represented that all such policies were produced, so there is nothing for this Court to compel.

The remaining dispute concerns Request No. 13, which is purportedly directed to the *enforcement* of those policies.  But even assuming, without deciding, that the enforcement of the policies is relevant to the resolution of the issues raised by Koch's Complaint, AIIC's request goes too far.  The request for "all incidents, traffic violations, and traffic accident reports involving [Koch's] employees from May 1, 2012 to present" goes far beyond anything that could remotely be described as relevant to the narrow question of whether Koch enforced the safety policies it claims AIIC should have but failed to consider, let alone during a time period relevant to the case.  In an effort to narrow Request No. 13, AIIC offered to restrict the time frame to the period of the policy itself.  Then, at oral argument, AIIC further elaborated in response to questioning by the Court that what it really wanted were driver disciplinary files, because such files would presumably contain information about the extent to which Koch had or had not disciplined drivers for violations of its safety policies.

Neither proposed limitation saves Request No. 13.  As to the proposed temporal limitation, the relevance of events that occurred *after* AIIC established the schedule rating and calculated the policy premium eludes the Court.  And even if that time period were relevant, or the Court identified a different time period, the text of Request No. 13 cannot reasonably be read to call for "driver disciplinary files."  AIIC speculates that such files would contain reports of "incidents, traffic violations, and traffic accident reports," and therefore a request for the latter requires production of the former.  The Court declines to accept that tortured interpretation of Request No. 13.  A request for production of documents "must describe with reasonable particularity each item or

category of items to be inspected."  Fed. R. Civ. P. 34(b)(1)(A).  If AIIC wanted "driver disciplinary files" within a time period arguably relevant to this case, it could and should have made a specific request for them.  If it had, the Court might well have deemed Koch's objections waived because of Koch's failure to comply with Rule 34(b)(2).  In the circumstances presented here, however, and without in any way intending to signal approval of Koch's use of boilerplate objections, the Court will not order Koch to produce what is clearly not relevant or proportionate, nor to produce what has not been requested.  Accordingly, the Court will deny AIIC's motion to compel a further response to Request No. 13.[5]

## B.      Communications Between Koch and its Consultant

Koch's consultant, Patrick Charais of Synergetic Solutions, issued a Finding Report on June 18, 2018, based on his audit of AIIC's schedule rating calculation.  (Def. Ex. G.)  Koch turned over that report to AIIC in "pre-litigation settlement negotiations." (Pl. Suppl. Br. at 2 [Doc. No. 89].)  AIIC now seeks to discover the communications relating to the production of that report, including both communications between Koch and Charais and Koch's internal communications about the report.[6]

---

[5]  The Court emphasizes, however, that nothing in this decision prevents AIIC from moving for appropriate relief if Koch seeks to introduce, or if Koch's testifying experts have reviewed, information from "driver disciplinary files" or from any documents that would have been responsive to Request No. 13 or any other request, but that Koch failed to produce.

[6]  AIIC's Request for Production No. 2 asks for "[a]ll communications between [Koch] and Synergetic Solutions or Patrick Charais."  Request No. 7 asks for "[a]ll internal and external correspondence between [Koch], AIIC, and any third-party regarding the Policy's schedule rating factors or debits."  (Def. Ex. I at 4–5.)

As in its other discovery responses, Koch responded to AIIC's requests for communications relating to Charais's work by invoking its boilerplate objections, which included a boilerplate objection to the production of privileged and work product communications.  (Def. Ex. I at 2, 4–5.)  And even though the Pretrial Scheduling Order in this case required privilege logs to be produced within 30 days of any production from which documents were withheld on grounds of privilege [Doc. No. 24 at 4], Koch did not produce a privilege log identifying documents withheld on the basis of privilege or work product protection until October 7, 2019, more than five months after it first produced documents and only after the Court ordered it to do so.  (Sugden Decl. ¶ 12 [Doc. No. 60-14].)  AIIC estimates there are approximately 80 responsive documents dating between October 21, 2017 and June 18, 2018, that were withheld, ostensibly on the basis of both attorney-client privilege and work product protection.  (Def. Suppl. Br. at 2 [Doc. No. 85], referring to Def. Ex. L at 4-9 [Doc. No. 60-12]; *see also* Pl. Mem. Opp'n at 10 [Doc. No. 66]).[7]

AIIC argues that Koch waived any claim of privilege or work-product protection by failing to make a timely, specific objection and by failing to serve a timely privilege log.  It also argues that even if the objection and the log had been timely, the documents are neither privileged nor work product.  Finally, it argues that Koch waived any

---

[7]  Koch did not contend the Charais report itself was immune from discovery, since Koch voluntarily produced it to AIIC in support of its demand for a refund even before the lawsuit was commenced.

protection for communications relating to the subject matter of the report when it produced the report itself to AIIC.

**1.      Whether the Communications Relating to Charais are Protected by the Attorney-Client Privilege**

In a case such as this, which arises under state law and for which state law will supply the rule of decision under *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938), state law also governs privilege.  Fed. R. Evid. 501.  In Minnesota, the attorney client privilege is codified in Minn. Stat. § 595.02, subd. 1(b), which provides: "An attorney cannot, without the consent of the attorney's client, be examined as to any communication made by the client to the attorney or the attorney's advice given thereon in the course of professional duty; nor can any employee of the attorney be examined as to the communication or advice, without the client's consent."  The Minnesota Supreme Court has held:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the privilege be waived.

*Kobluk v. Univ. of Minn.,* 574 N.W.2d 436, 440 (1998) (citing 8 John Henry Wigmore, Evidence § 2292, at 554 (John T. McNaughton ed., 1961).  *See also State v. Taylor,* 869 N.W.2d 1, 22 (Minn. 2015) ("The attorney-client privilege protects from disclosure communications that seek to elicit legal advice from an attorney acting in that capacity, that relate to that purpose, and that are made in confidence by the client unless the privilege is waived.") (internal quotes and ellipses omitted).  "'The purpose of the privilege is to encourage the client to confide openly and fully in his attorney without fear

11

that the communications will be divulged and to enable the attorney to act more effectively on behalf of his client.'" *Kobluk,* 574 N.W.2d at 440, quoting *National Texture Corp. v. Hymes,* 282 N.W.2d 890, 896 (Minn.1979).  Courts typically have interpreted the privilege also to extend to communications from counsel in response to the request for advice, i.e., "communications relating to the purpose of seeking or rendering legal advice."  *Kobluk*, 574 N.W.2d at 441.  However, the privilege attaches only to the communications, not to the facts underlying the communications.  *Id.* Furthermore, if the communications are not for the purpose of seeking or rendering legal advice, such as, for example, when an attorney is acting as a "mere scrivener," no privilege attaches.  *Id.* at 440.  Finally, the privilege protects against discovery only if it has not been waived.  *State ex rel. Schuler v. Tahash*, 278 Minn. 302, 307–08 (1967). The privilege is to be "strictly construed," and the burden is on the party resisting disclosure to present facts to establish the privilege's existence.  *Kobluk* at 440.

In the corporate setting, the Eighth Circuit has observed that privileged communications can include communications not only between counsel and management who will make decisions based upon the advice, but also communications to company counsel by employees who, at the direction of their superiors, communicate with counsel on matters within the scope of their duties so that the company can secure legal advice, so long as the communications are not disseminated beyond those who need to know their contents.  *Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 609 (8th Cir. 1977).  It has also held that in certain circumstances, the privilege can extend to an independent contractor who is acting as "a representative of the client for purposes of applying the

attorney-client privilege." *In re Bieter Co.*, 16 F.3d 929, 936 (8th Cir. 1994).  In *Bieter,* the court held that communications from a longtime independent consultant to company counsel were privileged when the consultant was the "functional equivalent" of an employee and, as such, "possess[ed] the very sort of information that the privilege envisions flowing most freely" due to his "significant relationship to the client and the client's involvement in the transaction that is the subject of legal services." *Id.* at 938 (internal quotes omitted).  The consultant in *Bieter* had been the client's sole representative at a number of key meetings and "likely possess[ed] information that [was] possessed by no other," making him "precisely the sort of person with whom a lawyer would wish to confer confidentially in order to understand [the client's] reasons for seeking representation." *Id.*  The court accordingly held there was "no principled basis to distinguish [the consultant's] role from that of an employee" for purposes of the privilege. *Id.*

In addition, courts have held that the privilege can also extend to an expert consultant such as an accountant or a foreign language interpreter retained by an attorney to assist him or her in understanding information on which the attorney has been asked to render legal advice.  *E.g.*, *United States v. Cote*, 456 F.2d 142, 144 (8th Cir. 1972).

The Minnesota Supreme Court has not adopted any particular test for the application of the privilege in the corporate setting.  *See Leer v. Chicago, M., St. P. & P. Ry. Co.*, 308 N.W.2d 305, 308–09 (Minn. 1981) (describing the various tests applied by other courts, including the Eighth Circuit in *Diversified,* and concluding the communications at issue were not privileged regardless of the test applied).  Accordingly,

courts in this District have frequently looked to Eighth Circuit precedent such as
*Diversified* and *In re Bieter* to fill that gap.  *See, e.g.*, *Inline Packaging, LLC v. Graphic
Packaging International, Inc.*, Case No. 15-cv-3183 (ADM/LIB), 2017 WL 9325027, at
*4 (D. Minn. May 5, 2017); *Hudock v. LG Electronics U.S.A., Inc.*, Case No. 0:16-cv-
1220-JRT-KMM, 2019 WL 5692290, at *4–*5 (D. Minn. Nov. 4, 2019).

　　　Turning to the instant case, all but one of the communications Koch seeks to
protect from discovery on grounds of attorney-client privilege included Giebel, who was
Koch's in-house counsel.[8]  Furthermore, although Koch has offered no declarations to
support a claim that the purpose of the allegedly privileged communications was to seek
or render legal advice, the Minnesota Supreme Court has held that if a matter is
"committed to a professional legal adviser," it is "*prima facie so committed for the sake
of the legal advice . . .*  and is therefore within the privilege unless it clearly appears to be
lacking in aspects requiring legal advice."  *Kobluk*, 574 N.W.2d at 442, quoting
8 Wigmore § 2296 at 567 (emphasis in original).  The more difficult questions are
whether the communications were in all instances with the *client*, and whether the
privilege was waived by including individuals who did not need to receive the
communications in order to fulfill the purpose of seeking or receiving the advice of
counsel.  Here, Koch asserts that the privilege applies not only to *internal* Koch

---

[8]  Entry # 20 on the privilege log [Doc. No. 60-12 at 7], is an email sent by Breanna
Enerson to Sue Norris, Bill Sullivan and Dennis Hylan on March 30, 2018.  Giebel does
not appear as a recipient. The subject of the email is described as "Conference call with
Pat Charais."  (*Id.*)  Enerson appears to be a member of Koch's legal team, so the Court
infers that Koch invokes the privilege based on her presence on the email.

communications between Giebel and others within the company, but also to *external* communications that included Charais himself, who was not a Koch employee at all but an independent consultant.

With regard to the communications that included Charais, Koch's argument in support of the assertion that they are covered by the attorney-client privilege is cursory at best.  The argument seems to boil down to the following: (1) Charais "worked primarily with Koch's General Counsel, Kevin Giebel" (Pl. Mem. Opp'n at 3), and Koch's Rule 30(b)(6) deponent William Sullivan testified that Giebel supervised Charais's work (Sullivan Dep. (Def. Ex. A) at 251–52); (2) the attorney-client privilege is "based upon the principle 'that sound legal advice or advocacy . . . depends upon the lawyer's being fully informed by the client'" (Pl. Mem. Opp'n at 10–11); and (3) Giebel was necessarily acting as an attorney when he worked with Charais because auditing schedule rating debits to workers compensation premiums is not an ordinary business practice.  (Pl. Mem. Opp'n at 11–12.)

The Court observes at the outset that Giebel did not retain Charais, let alone retain him to assist Giebel in rendering legal advice to Koch.  On the contrary, it was Sullivan who first learned of Charais and retained him to audit the premiums paid to AIIC. (Sullivan Dep. (Def. Ex. A) at 247–49; Pl. Mem. Opp'n at 20.)  Indeed, Giebel's October 23, 2017, letter to AIIC states that "Bill Sullivan, [Koch's] Director of Risk Management, is overseeing the project."  (Def. Ex. F at 1.)  It was only later that supervision of Charais's work was turned over to Giebel.  (Sullivan Dep. (Def. Ex. A) at 251–52.)  Nor does Koch argue that Charais was the "functional equivalent" of an employee as

described in *Bieter* or *Hudock,* and the Court finds no basis in the record to conclude as

much.  While Koch submitted four declarations with its response to the instant motion, all

four address Koch's efforts to respond to AIIC's discovery; not one speaks to the basis on

which Koch asserts privilege (or work product protection, for that matter) as to the

challenged communications.  (Doc. Nos. 67–70.)

Koch implies that the Court should find the communications privileged because

auditing workers compensation premiums was not an "ordinary business practice."  Aside

from the fact that it introduced no evidence to that effect, the argument misses the point.

The question is not whether auditing workers compensation premiums was *ordinary*, but

whether Giebel retained Charais to assist him in rendering *legal* rather than *business*

advice.  In *U.S. Postal Service v. Phelps Dodge Refining Corp*., the court found that

communications between the defendants' in-house counsel and outside consultants who

were retained to formulate a remediation plan and to oversee remedial work were not

privileged.  "Their function was not to put information gained from defendants into

usable form for their attorneys to render legal advice, but rather, to collect information

not obtainable directly from defendants." 852 F. Supp. 156, 161 (E.D.N.Y 1994) (citing

*United States v. Kovel,* 296 F.2d 918 (2nd Cir. 1961) and *Federal Trade Comm'n v.*

*TRW, Inc.,* 628 F.2d 207, 212 (D.C. Cir. 1980)).  The facts here offer even less support

than in *U.S. Postal Service* for a finding that Giebel's communications with Charais were

privileged, because it was Sullivan, not Giebel, who retained Charais, and the retention

was for the business purpose of determining whether Koch had been overcharged for its

workers compensation premiums.

Accordingly, the Court concludes that Koch has not carried its burden of proof that the withheld communications with Charais were covered by the attorney-client privilege, notwithstanding Giebel's involvement in them.

This does not mean, however, that *internal* Koch communications between Giebel and other Koch employees about Charais's work might not be privileged. Such internal communications might still have related to the seeking and providing of legal advice in light of Charais's findings. Unfortunately, the information currently before the Court is insufficient to establish that was the case. True, Minnesota law presumes that when a matter was "committed to a professional legal adviser" (i.e., Giebel) it was "prima facie so committed for the sake of the legal advice." *Kobluk*, 574 N.W.2d at 442. But questions remain, including whether Giebel's role in the communications was that of the company's legal counsel or that of a businessman,[9] and if so, whether the communications were disseminated only to those who needed to know their contents. Nothing in Koch's response to the motion to compel sheds light on these questions. Neither the privilege log nor the declarations identify the roles of the individuals who communicated with Giebel or Charais by title, job responsibility, or the particular reason each was included or how that reason related to the seeking or providing of legal advice.

---

[9] AIIC points out that Giebel's title was that of Executive Vice President and not simply General Counsel. Among the various points not addressed in Koch's declarations is whether Giebel had a business role in the company in addition to his role as its counsel and, if so, whether it was in his business capacity or his legal capacity that he communicated with others within the company about Charais's work.

Nor can that information necessarily be inferred from the vague description of the communications themselves.

AIIC argues, not without justification, that Koch waived its claim of privilege when it failed to timely produce a privilege log as required by Federal Rule of Civil Procedure 26(b)(5) and the Pretrial Scheduling Order, and because it failed to adequately support its claim of privilege in connection with this motion.[10]  It is tempting to resolve this motion on that basis, to find claims of privilege waived, and to order the documents produced.  However, because of the importance of the attorney-client privilege in our system of justice and the resulting reticence of courts to find that it has been waived, and because, although insufficient, it was perhaps not wholly unreasonable for Koch to believe that the presence of its General Counsel on internal communications on which a relatively small number of people were copied would suffice to demonstrate their privileged nature, the Court will exercise its discretion to allow Koch an opportunity to

---

[10]  AIIC also urges the Court to find that there was a subject matter waiver requiring production of the privileged communications because Charais's final report was disclosed to AIIC during the attempted negotiations before the litigation began and because it was also disclosed in discovery in response to a specific request by AIIC, as well as to Koch's expert.  Koch has steadfastly taken the position that neither it nor its testifying expert intend to rely on the report, nor does Koch intend to introduce it at trial.  Additionally, the Court's review of the case law on the subject of implied waivers indicates that the Minnesota state courts have tended to take a restrictive view of the circumstances under which a waiver of the privilege will be extended beyond the specific privileged communication already disclosed.  *See generally*, *State v. Walen*, 563 N.W.2d 742, 752 (Minn. 1997); *In re Truscott*, Case No. A15-1767, 2016 WL 2946218, at *5 (Minn. Ct. App. May 23, 2016).  The Court has found no Minnesota cases, nor has AIIC cited any, to suggest that the Minnesota Supreme Court would adopt the doctrine of subject matter waiver to require the production of privileged communications between an attorney and his client in the circumstances presented here.

submit for *in camera* review the *internal* communications on its privilege log between

October 21, 2017, and June 18, 2018.  Simultaneously, it must file detailed declarations

supporting its claim that those internal communications were properly withheld as

attorney-client privileged communications.[11]  The declarations must state, as to each such

communication sought to be withheld on the basis of attorney-client privilege, whether

the communication was made for the purpose of seeking legal advice or for the purpose

of providing legal advice. The declarations must identify each individual who authored or

received the communication by name, title, and his or her job responsibilities insofar as

they were pertinent to the communication, and must state specifically why each was

included in the communication about Charais's work, specifically addressing how that

related to the seeking or providing of legal advice.  To the extent the declarations must

include privileged information in order to make a sufficient showing, Koch may file the

declarations under seal, with a public version redacted *only to the extent necessary to*

*protect privileged information*, filed contemporaneously.

The Court will conduct a conference call with counsel for the parties on May 8,

2020, to set a deadline by which the declarations must be filed and the documents

submitted to chambers, as well as the means by which the documents will be submitted.

No later than one week after the declarations are filed, AIIC may file a short letter brief

setting forth its challenges, if any, to the adequacy of Koch's showing.  The Court will

---

[11]  This "second chance" does not, however, extend to communications that were sent,
forwarded, or copied to individuals outside the company, including Charais.

issue a final ruling regarding the result of its *in camera* review within three business days

after receiving Koch's response.

### 2.   Whether the Communications With and About Charais are Protected as Work Product

The Court's determination as to attorney-client privilege, both as to the

communications with Charais and the internal Koch communications about him, only

resolves the first of Plaintiff's two grounds for withholding the documents.  Koch also

argues that the communications with and about Charais were properly withheld from

production because they were generated in anticipation of litigation and therefore are

protected as work product.  Unlike attorney-client privilege, the scope of work product

protection in the federal courts is a matter of federal law.  Federal Rule of Civil

Procedure 26(b)(3) delineates the scope of work product protection in the federal courts:

> Ordinarily, a party "may not discover documents and tangible things that are
> prepared in anticipation of litigation or for trial by or for another party or its
> representative (including the other party's attorney, consultant, surety, indemnitor,
> insurer, or agent).

Fed. R. Civ. P. 26(b)(3)(A).  While work product is often that of an attorney, the work

product doctrine is not confined to information or materials gathered or assembled by a

lawyer, nor need it have been requested by an attorney or communicated by or to a client

of an attorney.  *Diversified Indus., Inc.*, 572 F.2d at 603.

Moreover, work product protection may, and often does, begin before a lawsuit is

filed.  As Wright and Miller have said,

> Prudent parties anticipate litigation, and begin preparation prior to the time suit is
> formally commenced. Thus the test should be whether, in light of the nature of the
> document and the factual situation in the particular case, the document can fairly

> be said to have been prepared or obtained because of the prospect of litigation. . . .
> But the converse of this is that even though litigation is already in prospect, there
> is no work-product immunity for documents prepared in the regular course of
> business rather than for purposes of the litigation.

8 Fed. Prac. & Pro. Civ. § 2024 (3d ed.); *see also Diversified Indus.*, 572 F.2d at 603.

The dispute raised by the present motion turns on whether "in light of the nature of the document and the factual situation in the particular case," the communications withheld "can fairly be said to have been prepared or obtained because of the prospect of litigation," rather than solely for an ordinary business purpose. *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987) (cert. denied, 484 U.S. 917 (1987)); *Banks v. Wilson*, 151 F.R.D. 109, 112 (D. Minn. 1993).

Courts in this District analyze work product protection in two steps. First, the Court must assess whether "litigation is already in prospect." Second, the Court must determine whether each specific document was prepared *because* of the prospect of litigation, rather than in the regular course of business. Just because litigation is on the horizon does not mean there is a blanket protection for all documents generated thereafter. *See, e.g.*, *Diversified Indus. Inc.*, 572 F.2d at 604; *Simon*, 816 F.2d at 401; *Ispat Inland, Inc. v. Kemper Envtl., Ltd.*, Case No. 06-civ-60 PAM/JSM, 2007 WL 737786, at *3 (D. Minn. Mar. 8, 2007). The work product analysis is a fact-specific determination, and the burden of proof is on the party asserting the protection—here, Koch. *Banks*, 151 F.R.D. at 112.

As to the first step, Koch points to two documents in the record to support its claim that litigation was anticipated as of October 21, 2017. (Pl. Mem. Opp'n at 12.)

First, Koch notes that the subject of the October 21, 2017, communication, identified as #55 on the privilege log, is described as "Possible Lawsuit Against Amerisafe." (Def. Ex. L at 4.) Second, Koch points out that on October 23, 2017, Giebel wrote AIIC's Deputy General Counsel demanding that AIIC provide information that had been requested by Charais and threatening "more formal legal action" if the information was not provided. (Def. Ex. F at 2.)

But even assuming, without deciding, that this was sufficient to show that Koch might have anticipated litigation to compel the disclosure of information to which Koch felt it was entitled, Koch has offered no evidence to prove a specific date by which it reasonably anticipated litigation with AIIC to recoup excessive premiums based on an improperly calculated schedule rating, the subject on which Charais was retained to conduct an audit and prepare a report, and to which the alleged work product communications presumably pertained.[12]

In *Selective Ins. Co. of S.C. v. Sela*, Case No. 16-cv-4077 (PJS/SER), 2017 WL 8315885, at \*3–5 (D. Minn. October 10, 2017), Magistrate Judge Rau rejected the plaintiff's argument that certain documents were protected work product when there was only "its counsel's assertions" and "no information from [the plaintiff] itself in support of the fact that it anticipated litigation" at any particular time. *Id.* at \*3, \*5. Judge Rau acknowledged that the plaintiff "must have anticipated litigation at some point before this lawsuit was filed," *id.* at \*6, but nothing in the record established that date. Here, as in

---

[12] As already noted, Koch's declarations in response to AIIC's motion did not provide any factual support for its position on privilege or work product.

*Selective*, Koch failed to provide specific evidence to support its claim that it anticipated litigation at a particular time, and that the challenged communications were prepared because of that anticipated litigation.

Nor is the anticipation of litigation inherent in the nature of Charais's analysis. On the contrary, for all Koch and Charais knew, the analysis might well have revealed no basis for a claim against AIIC, let alone a basis on which to anticipate litigation.  "[I]t is important to distinguish between an investigative report developed in the ordinary course of business as a precaution for the remote prospect of litigation and materials prepared *because* some articulable claim, likely to lead to litigation, . . . [has] arisen."  *Workman v. Cincinnati Ins. Co.*, Case No. 2:17-cv-036 PLC, 2017 WL 6025999, at *4 (E.D. Mo. Dec. 5, 2017) (finding that reports generated in course of insurance investigation were developed in the ordinary course of business) (cleaned up) (emphasis in original).  As Magistrate Judge Rau found in *Selective,* the fact of an investigation alone established nothing more than an "inchoate" or "remote" possibility of litigation.  *Id.* at *5.  Charais's report was not completed until June 18, 2018, and not even sent to AIIC to gauge their reaction until June 29, 2018, 11 days after the latest date of the communications that are the subject of this motion.

Accordingly, the Court finds that Koch has failed to show that any of the withheld communications between October 21, 2017, and June 18, 2018, relating to Charais's work were immune from discovery as work product.  Therefore, Koch is ordered to produce to AIIC within ten days of the date of this Order all such communications with the sole exception of the potentially attorney-client privileged communications discussed

in the preceding section that will be submitted for review *in camera*, i.e., the

communications on the privilege log that were internal to Koch.[13]  To be clear, however,

if any such internal communication was subsequently forwarded or copied to someone

outside of Koch, (such as to Charais or a member of his firm), it must be produced as

well, since any possible claim of privilege would have been waived as a result.

### C.     AIIC's Request for Sanctions

AIIC argues that Koch should be sanctioned for its discovery conduct for two

reasons: (1) Koch was untimely and inadequate in its document production, including but

not limited to the matters raised by this motion, and (2) Koch's corporate representative,

William Sullivan, was not adequately prepared for his Rule 30(b)(6) deposition.

Pursuant to the Court's Pretrial Scheduling Order, the parties' initial disclosures

under Rule 26(a)(1) were due on February 27, 2019.  (Pretrial Scheduling Order at 3

[Doc. No. 24].)  According to AIIC, Koch submitted its written initial disclosures on

February 28, 2019—one day late—but did not include any documents.  (Sugden Decl.

¶ 2.)  Koch contends this was because it "possesses little relevant information other than

the facts regarding the formation of a contract between the parties, and few relevant

documents other than the Policy itself."  (Williams Decl. ¶ 3.)  Koch produced the

---

[13]  After oral argument the Court requested supplemental briefing on "whether the
disclosure by Koch of the Charais report constituted a waiver of any claim of work
product immunity with regard to documents relating to the preparation of that report
and/or documents relating to or discussing the report itself.  (December 9, 2019 Minute
Entry [Doc. No. 77].)  Because the Court has concluded Koch failed to demonstrate that
the communications were protected work product, it does not reach the issue of waiver.

documents identified in the disclosures on March 21, 2019, but the form of production was not compliant with the ESI Protocol agreed to by the parties and incorporated into the Pretrial Scheduling Order.  (Pretrial Scheduling Order Ex. A [Doc. No. 24-1]; Sugden Decl. ¶ 2.)

AIIC served written discovery on Koch on March 22, 2019 and Koch responded on April 22, 2019.  (Sugden Decl. ¶ 3; Giebel Decl. ¶ 5 [Doc. No. 69].)  Koch produced its first tranche of 178 responsive documents on April 26, 2019.  (Sugden Decl. ¶ 3; Giebel Decl. ¶ 5.)  Declarations from Koch's IT Manager and Corporate Paralegal reveal that the 178 documents came from an email search that initially produced 606 potentially responsive documents.  (Gammon Decl. ¶ 7 [Doc. No. 67]; Miller Decl. ¶ 3 [Doc. No. 68].)  Koch's IT Manager attests that the first search took approximately 15 hours to complete because the relevant emails were stored on an old archive system whose data cannot be migrated to a more modern system and which requires that each email be manually and individually exported.  (Gammon Decl. ¶¶ 3–7.)

In early May, AIIC sent Koch a six-page conferral letter that identified deficiencies in Koch's written responses and document production.  (Sugden Decl. ¶ 4; Giebel Decl. ¶ 7.)  Koch did not respond to the letter until nearly a month later, on June 5, 2019.  (Williams Decl. ¶ 6; Sugden Decl. ¶ 4.)  Koch explains this delay by indicating there was "overlap" between the discovery concerns and issues with scheduling depositions, so Koch chose to "not respond in writing until after the issues with the upcoming depositions were resolved."  (Williams Decl. ¶ 6.)

The Pretrial Scheduling Order provided that document production was to be "substantially complete" by May 31, 2019, in order to facilitate taking depositions. (Pretrial Scheduling Order at 3.)  AIIC estimates that it had received only 20% of the documents Koch should have produced by the May 31 deadline.  (Sugden Decl. ¶ 9.)

On June 28, 2019, Koch agreed to conduct additional searches for responsive emails.  (Williams Decl. ¶ 7; Sugden Decl. ¶ 5.)  Koch went on to produce hundreds more documents on August 23, 2019, September 13, 2019, and September 19, 2019.  (Sugden Decl. ¶ 9; Williams Decl. ¶ 9.)  Two of these three productions did not comply with the ESI Protocol (Sugden Decl. ¶ 9), two came after the close of fact discovery on August 27, 2019 (Pretrial Scheduling Order at 3), and all three came after AIIC completed its depositions of Koch's witnesses on August 22, 2019 (Sugden Decl. ¶ 8).  After the parties agreed on search terms to locate a manageable number of documents pertaining to Koch's "due diligence" in selecting the subject policy, Koch produced additional documents on October 24, 2019.  (Williams Decl. ¶ 10.)  AIIC argues that because Koch failed to timely produce most documents and failed to comply with the Pretrial Scheduling Order, AIIC should be awarded its costs and fees incurred in engaging in the discovery conferrals and in bringing this motion.[14]

Additionally, pursuant to the parties' agreement, AIIC filed and served its Amended Answer and Counterclaim on August 5, 2019 [Doc. No. 47].  Under Federal

---

[14]  As previously noted, AIIC argues that although the parties had resolved the dispute concerning AIIC's request for "due diligence" documents prior to the hearing, Koch's initial failure to produce that information should still be considered by the Court in ruling on AIIC's request for sanctions.

Rule of Civil Procedure 15(a)(3), Koch had 14 days to respond—until August 19, 2019.

But Koch did not file an answer to the counterclaim until August 28, 2019 [Doc. No. 49],

after AIIC had taken Rule 30(b)(6) and fact depositions of Koch on August 21 and 22,

2019.  (Sugden Decl. ¶ 8.)

AIIC also contends that Sullivan, Koch's corporate representative, was not

adequately prepared for his Rule 30(b)(6) deposition.  Sullivan testified that he prepared

for the deposition by meeting with counsel twice, for a total of about three to four hours,

and reviewing Koch's discovery responses and Charais's report.  (Sullivan Dep. (Def.

Ex. A) at 10–11.)  AIIC contends Sullivan was inadequately prepared because his

preparation had not included discussions with other individuals within the company and

review of emails and other documents that might have provided additional content

beyond Sullivan's own knowledge, and as a result, "[h]e could not answer many

questions under topics that were clearly disclosed."  (Def. Mem. Supp. at 31, 33–34.)

Specifically, AIIC complains Sullivan was unable to answer questions about

Koch's document preservation and retention policies (Topic No. 1), efforts to obtain

quotes from competitor insurance agencies and interactions with AIIC before entering

into the policy (Topic Nos. 8 and 10), Koch's purchase of replacement insurance after it

terminated the AIIC policy in February 2014 (Topic No. 21), Koch's retention of Charais

(Topic No. 22), and Koch's affirmative defenses to AIIC's counterclaim (Topic No. 25).

(*Id.* at 31–38.)  AIIC also argues that Koch's counsel impermissibly instructed Sullivan

not to answer some questions about Koch's work with Charais based on counsel's

erroneous invocation of the attorney-client privilege.  (*Id.* at 36–37.)  AIIC contends the

inability or refusal to answer AIIC's questions, combined with Koch's delays in document production and in responding to AIIC's Amended Answer and Counterclaim, have made it necessary for AIIC to take a second 30(b)(6) deposition of Koch, and that Koch should bear the costs of that deposition, including AIIC's counsel's preparation and travel, and the court reporter fees.

Although Koch has agreed to let AIIC reconvene Sullivan's Rule 30(b)(6) deposition, it does not agree that it should pay the costs associated with that continued deposition. (Williams Decl. ¶ 8; Sugden Decl. ¶ 11.) Koch argues that Sullivan was "extremely well-prepared," and was able to provide "extensive, detailed testimony in response to the majority of counsel's questions." (Pl. Mem. Opp'n at 19.) The questions that he could not answer, Koch maintains, were largely irrelevant, called for speculation, or exceeded the scope of the proposed topic. (*Id.* at 20–21.) Koch also points out that AIIC proceeded with Sullivan's deposition knowing that Koch was still searching for and would be producing additional documents and that Koch had not yet answered AIIC's Amended Answer and Counterclaim. (*Id.* at 21.) Finally, Koch contends the additional information AIIC seeks could be more efficiently obtained through other discovery means, such as interrogatories.

Federal Rule of Civil Procedure 16 provides that "on motion or on its own, the court may issue any just [sanction] orders . . . if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). Furthermore, under Federal Rule of Civil Procedure 37, upon granting a motion to compel a Court is required to order the party "whose conduct necessitated the motion . . . to pay the movant's

reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R.

Civ. P. 37(a)(5).  A court must not order this payment, however, if the movant failed to

confer in good faith prior to filing the motion.  Fed. R. Civ. P. 37(a)(5)(A)(i).  Similarly,

if the party opposing the motion had a substantial justification for failing to respond or if

"other circumstances make an award of expenses unjust," the court must not order the

payment of expenses.  Fed. R. Civ. P. 37(a)(5)(A)(ii)–(iii).

Additionally, Rule 37(d) provides that a court may order sanctions if a person

designated under Rule 30(b)(6) fails to appear for a deposition.  Fed. R. Civ. P.

37(d)(1)(A)(i).  "Failure to appear" includes not simply a wholesale failure to show up

for the deposition, but also the failure to produce a witness who is adequately prepared

for one or more topics in the Rule 30(b)(6) notice.  *See Prairie River Home Care, Inc. v.*

*Procura, LLC*, Case No. 17-cv-5121, July 19, 2019 Order at 38–41 [Doc. No. 444].

Furthermore, that the discovery sought by the topic was objectionable is not an excuse for

failing to be prepared to testify on that topic unless the party being deposed had filed a

motion for a protective order prior to the deposition.  Fed. R. Civ. P. 37(d)(2), *see id.* at

40.

While the Court understands AIIC's frustration with the protracted and inefficient

process of obtaining documents from Koch, AIIC's demand—to be reimbursed for all of

its time spent meeting and conferring with Koch throughout the discovery process and for

all of its time spent in preparing this motion—goes too far.  The Court declines to

sanction Koch retrospectively on the basis of complaints about its conduct that

accumulated over the course of six months before AIIC brought a motion to compel,

particularly given that, if the requests for production at issue in this motion are any indication, it is far from clear that AIIC's requests were consistently tailored to information that was relevant and proportional to the issues in the case.

The Court does find, however, that AIIC is entitled to have Koch bear the cost of re-producing its Rule 30(b)(6) witness for a continuation of his deposition, for several reasons. First, Sullivan was clearly inadequately prepared to testify about some of the noticed topics, including at least Koch's document retention policy and its efforts to preserve and collect documents for this litigation, and Koch's defenses to AIIC's counterclaim. As to other topics, it is unclear whether further preparation would have yielded further information because Koch's belated production of the documents meant that Sullivan did not have a chance to review them before the deposition. If, as Koch contends, some of those topics were irrelevant, Koch should have raised those objections prior to the deposition, first through a meet and confer process with counsel and then, if necessary, by a motion for a protective order. It apparently did not do the former; it certainly did not do the latter.

Second, Koch's belated production of a significant number of additional documents after the deposition thwarted the purpose of the Pretrial Scheduling Order, which was specifically formulated to require that document discovery be substantially complete before depositions were taken. Not only did the delay potentially affect Sullivan's preparation on certain topics, but it precluded AIIC's counsel from asking Sullivan questions about those documents. Koch's argument that AIIC knew when it took the deposition that it did not yet have all the documents is no excuse. In light of the

30

impending fact discovery deadline, AIIC was not required to wait any longer to take Sullivan's deposition.

That being said, AIIC is not entitled to a complete do-over of Sullivan's deposition at Koch's expense.  Koch represents that Sullivan's deposition went a full seven hours. (Sullivan Dep. (Def. Ex. A).)  That is all that is permitted under Rule 30(d)(1).  The Court is willing to assume that some of that time might have been used differently or more efficiently if Sullivan had been adequately prepared and if documents had been timely produced prior to the deposition, but AIIC is not entitled to an unbounded second deposition.

Instead, the Court will order Koch to make Sullivan available for a further 30(b)(6) deposition for no more than two (2) hours.  Koch must take the necessary steps to assure that Sullivan is prepared for Topics 1 and 25, including by reviewing relevant documents and talking with knowledgeable individuals.  As to the other topics (Nos. 8, 10, 21, and 22) that were the subject of AIIC's complaints in this motion, it appears Sullivan had significant personal knowledge on those topics, but he must review the documents Koch produced (including documents produced pursuant to this Order) insofar as they pertain to those topics.  Furthermore, he must follow up with knowledgeable individuals in the company if his review of the documents reasonably indicates that others have additional substantive information responsive to those topics that goes beyond Sullivan's own knowledge.  To the extent documents were produced after the prior deposition that do *not* pertain to the above-referenced Rule 30(b)(6) topics, nothing precludes AIIC's counsel from questioning Sullivan about them in his individual

31

capacity, just as he could have done during the prior deposition, but Sullivan will not be required to prepare for such questions as a Rule 30(b)(6) witness.[15]

As for the costs and logistics of the deposition, in light of the current COVID-19 crisis, the Court strongly encourages the parties to pursue remote technology alternatives for that deposition if, at the time of the deposition, travel and in-person proceedings remain risky.  In any event, any out-of-pocket expenses associated with the deposition, such as court reporting fees and travel (if any) by the witness or by AIIC's counsel, will be borne by Koch.  In addition, Koch shall pay the fees of one AIIC attorney for the time spent in the deposition, plus the fees for three hours of preparation by that AIIC attorney. While the Court understands that the AIIC attorney, and perhaps law firm staff, may spend additional time in preparation, it is also cognizant of the fact that much of that time would have had to have been spent in any event, at AIIC's expense, if the documents had been produced prior to the deposition.

Finally, as for the fees associated with AIIC's counsel's preparation of those portions of this motion on which the Court is granting AIIC relief, the Court will issue a separate order after it completes the *in camera* review of Koch's documents.

---

[15]  In that regard, the Court agrees with Koch that Topic No. 22, on its face, pertained only to the retention of Charais and Synergetic Solutions.  While that topic could reasonably be read to include the scope, goals, circumstances, reasons for, and terms of that retention, it did not encompass the substantive work done by Charais and his firm or the communications about that work.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Compel

Discovery [Doc. No. 57] is **GRANTED IN PART AND DENIED IN PART**, as set

forth fully herein.

Dated: May 4, 2020                        _s/ Hildy Bowbeer_____
                                          HILDY BOWBEER
                                          United States Magistrate Judge